# WELLERSBURG AND WEST NEWTON PLANK ROAD COMPANY *vs.* JOHN YOUNG.

In a suit in the name of a corporation to recover a subscription to its stock, the plaintiff offered in evidence *letters patent* issued by the Governor of Pennsylvania, creating and erecting certain named subscribers, and also those who *shall afterwards subscribe*, into a body politic, by the name of "The Wellersburg and West Newton Plank Road Company," with all the privileges incident to a corporation. It was also proved that subscriptions were made by, and certificates of stock issued to, various persons, and the defendant appeared to be a subscriber subsequent to the date of the letters patent, and that the road was constructed, and toll-gates erected, and tolls collected thereon. HELD:

1st. That these facts were *some evidence* that the plaintiff was an incorporated company for the purpose of constructing a *plank road* by means of stock, and that the charter gave *authority* to the company to take subscriptions for stock *after* its date.

2nd. The defendant's contract being a subscription for stock of the company, is a contract which was necessary and usual as means for carrying into effect the purposes of such a charter.

3rd. The letters patent having conferred the power of making such a contract in Pennsylvania, the act of 1834, ch. 89, sanctions the like power in Maryland.

4th. The letters patent sufficiently establish the *corporate existence* of the plaintiff, and the matters set forth and *recited in them* are to be taken as true, until the contrary is proved.

5th. The charter having given authority to take subscriptions, without specifying any *particular manner* in which it shall be done, and the defendant having offered no proof that the *mode adopted* in taking his subscriptions is at variance with any law applicable to the subject, the presumption is, that the contract was valid.

When its charter and valid statutory law are silent as to what contracts a corporation may make, as a general rule it has power to make all such contracts as are necessary and usual in the course of business, as means to enable it to attain the object for which it was created, and none other.

The creation of a corporation for a specified purpose, implies a power to use the necessary and usual means to effect that purpose.

The act of 1834, ch. 89, is a general authority to any corporation not chartered by our State, to make contracts here which are necessary to carry into effect the purposes of the charter, and not prohibited by it, or by some valid law.

Plank Road Company *vs.* Young.

APPEAL from the Circuit Court for Allegany county.

*Assumpsit* brought on the 16th of December 1852, by the appellant against the appellee, to recover a subscription made by the defendant for eight shares of the stock of the plaintiff at $25 per share. The declaration counts upon the subscription as a *promissory note* for $200, payable by the defendant to the plaintiff on demand, and also as a *contract* to pay $200 for eight shares of the stock bargained and sold by the plaintiff to the defendant. It also contains a count for money laid out and expended, and the *insimul computassent* count. Plea *non assumpsit*.

*Defendant's Exception.* The plaintiff, to maintain the issue on its part joined, offered in evidence letters patent issued by the Governor of Pennsylvania, under the seal of State, as follows:

"In the name and by the authority of the commonwealth of Pennsylvania, WILLIAM F. JOHNSON, Governor of said commonwealth, to all whom these presents shall come, sends greeting: Whereas an act of the General Assembly of the commonwealth, 'An act authorising the borough of Bolivar to dig a public well; in relation to State and turnpike roads, and to the pay of commissioners of Westmoreland county; incorporating the Wellersburg and West Newton Plank Road Company; empowering the Auditor General to examine the claim of Samuel Kerr; and relative to bridges in Lebanon county,' approved the fifteenth day of April, A. D., one thousand eight hundred and fifty, provides for the organization of a company by the name, style and title of 'The Wellersburg and West Newton Plank Road Company,' subject to all the provisions and restrictions of an act entitled 'An act regulating Turnpike and Plank Road Companies,' approved the twenty-sixth day of January, A. D., one thousand eight hundred and forty-nine, by which last recited act the Governor of this commonwealth is authorized and required to issue his letters patent under the seal of the State, in the manner and at the time therein specified; and whereas the stipulations, conditions and things in the said act regulating Turnpike and Plank Road companies, directed to be performed, have in all respects been

fully complied with: Now know ye, that in pursuance of the power and authority to me given by law, I, the said WILLIAM F. JOHNSON, Governor of the said commonwealth, do, by these presents, which I have caused to be made patent and sealed with the great seal of the State, create and erect the subscribers to the stock of the said company for the number of shares by them subscribed, to wit:" (then follows the names of various subscribers, with the number of shares of each,) "amounting in the whole to two thousand and thirty-four shares, and also those who shall afterwards subscribe, into one body politic and corporate, in deed and in law, by the name, style and title of The Wellersburg and West Newton Plank Road Company, and by the said name the subscribers shall have perpetual succession, and all the privileges and franchises incident to a corporation; and the said subscribers, and those who shall afterwards subscribe, their successors and assigns, are generally to be invested with all the rights, powers and privileges, and to be subject to all the duties, requisitions and restrictions specified and enjoined in and by the said acts of the General Assembly, and all other laws of the commonwealth. Given under my hand and the great seal of the State, at Harrisburg, this fifth day of July in the year of our Lord, one thousand eight hundred and fifty, and of the commonwealth the fifty-fifth."

To the admissibility of this evidence the defendant objected, but the court (PERRY, J.,) overruled the objection, and permitted the same to be read to the jury, and to this ruling the defendant excepted.

*Plaintiff's Exception.* In addition to the letters patent, the plaintiff offered in evidence the subscription book containing the defendant's subscription, and the testimony of several witnesses, all of which is fully stated in the opinion of this court. The plaintiff then offered four prayers, the first of which was assented to by the defendant, and granted by the court, and the others were rejected. (These prayers need not be stated, as no decision was passed upon them by this court.) The defendant then offered a prayer which was granted, and is set out in the opinion of this court. To this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*J. H. Gordon* for the appellant:

The subscription was declared on as a *promissory note*, and the case of *Turnpike Road vs. Hurtin*, 9 *Johns.*, 217, fully sustains this position. The court below instructed the jury that there was *no evidence* that the plaintiff was authorised to enter into the contract sued on, and that their verdict must be for the defendant. In this instruction there was error. The *letters patent* are sufficient evidence of the corporate existence of the company, and the corporate powers of the company and the execution of the contract by the defendant, being proven by his admission, it establishes a *prima facie* indebtedness against the defendant. A debt due to an incorporated company will be presumed to have been contracted in the lawful course of business, until the contrary is shown. 2 *Cowen*, 664, *New York Firemen Ins. Co. vs. Sturges.* 7 *Cowen*, 540, *Ex-parte Peru Iron Co.* 3 *Wend.*, 94, *Barker vs. Mechanic Fire Ins. Co.* The case of *Agnew vs. Bank of Gettysburg*, 2 *H. & G.*, 478, is precisely the same as this in principle. At the trial in that case, the bank produced in evidence the promissory note, and proved the endorsements, the demand and notice of protest, and then offered in evidence the patent from the Governor of Pennsylvania, which is in every material part, like the patent in this case. Upon that evidence the defendant prayed the court to instruct the jury that the plaintiff could not recover, which the court refused to do, and the Court of Appeals affirmed the judgment. It follows, therefore, that the granting of the defendant's prayer in this case was wrong, and the judgment must be reversed on that ground. The general doctrine, that a corporation can make no contract which is not necessary, either directly or incidentally, to enable it to answer the purposes of its charter, as stated in *Angel & Ames on Corp.*, 232, 234, 237, and in the case of the *Steam Navigation Co. vs. Dandridge*, 8 *G. & J.*, 318, is in no way violated by the position assumed by the appellant. There is no evidence to show that the contract was outside of the cor-

porate powers of the plaintiff. It appears from the charter that the company was authorised to *issue stock*, and the contract being for the sale of stock, it was within the express powers of the company. 9 *Md. Rep.*, 568, *Plank Road Co. vs. Hoffman.* The letters patent also show that the company was created for the purpose of making a plank road, and that the stock was subscribed as a part of its means of carrying on the object of its creation; that the subscribers and those who shall afterwards subscribe, are incorporated into one body politic and corporate, with all the privileges and franchises incident to a corporation. The other evidence shows that the road has been built and is now in use, having toll-gates erected thereon. All this is clearly *some evidence* that this contract was within the scope of its powers. *Angel & Ames on Corp.*, 110. 12 *Mass.*, 553, *Phillips' Academy vs. King.* 9 *Mass.*, 403, *Little vs. Obrien.*

*Thos. Devecmon* and *Geo. A. Pearre* for the appellee:

. Corporations are not only incapable of making contracts, which are forbidden by their charter, but in general they can make none which are not necessary either directly or indirectly to effect the objects of their creation. *Angel & Ames on Corp.*, 232, 245. 8 *G. & J.*, 318, *Steam Nav. Co. vs. Dandridge.* In the absence of the charter, there was no evidence of the powers conferred by it. The letters patent only prove the *fact* that the appellant was a corporation, but with what powers, and whether ecclesiastical or lay, elleemosynary or municipal, does not appear. It does not even appear that it was authorised to construct a plank road, or indeed any road at all. The mere *name* is no proof of the objects for which it was created. The fact that the road was constructed, is no proof that it had power under its charter to construct it; and, indeed, it does appear that it exceeded its powers, because the charter in Pennsylvania could not confer power to build a road and erect toll-houses in Maryland. This being a foreign corporation, it lives and has its being in the State where it is created, and though this fact is not an insuperable objection to its power of contracting in another State, yet it must show that the law of

its creation gave it authority to make such contracts. 14 *Pet.*, 129, *Runyan vs. Coster's Lessee, et al.* The *onus probandi* rests on the plaintiff to show the validity of this contract. In charters created by statute law, there are no implied powers. 13 *Pet.*, 587, *Bank of Augusta vs. Earle.* There is no proof in this case that this subscription was made *after* the company became a corporation, nor does it any where appear that *Shriver* had authority to make such a contract, and a corporation can only act through its agents. The statutes of Pennsylvania, referred to in the letters patent, are not produced, as they should have been, in order to show whether the company had complied with the restrictions and conditions of those laws. For these reasons we insist that there was no error in the action of the court below in granting the defendant's prayer.

ECCLESTON, J., delivered the opinion of this court.

This is an action of *assumpsit* which was tried upon the general issue.

For the purpose of proving the plaintiff to be a corporation, letters patent issued by the governor of Pennsylvania, were offered in evidence, to the admissibility of which the defendant objected, but the court permitted the same to go to the jury; and the defendant excepted. We are not, however, called on to revise that decision, inasmuch as there is no appeal on the part of the defendant.

The plaintiff also gave in evidence the following "subscription list, book or paper:"

"1850.—We, the subscribers, do hereby obligate ourselves, our heirs, executors and administrators, to pay to the Wellersburg and West Newton Plank Road Company, the sum of twenty-five dollars, for each share of stock respectively subscribed in said company, one dollar upon each share, part of said twenty-five dollars, being paid at the time of subscribing."

Then follows a list of subscribers names with the number of shares taken by each; the shares so taken amounting to 2746. In this list, the name of the defendant appears as a subscriber for eight shares. Some of the subscribers in this list are, but many of them are not, included in the names

mentioned in the letters patent; the defendant being one of those not so included. Samuel W. Pearson is the last subscriber on the list whose name appears in the letters patent. After his signature there are twenty subscribers, the defendant being the eighteenth. Thomas J. McKaig and Wm. W. McKaig, are the last two. Each of them testifies, that his name signed to the said subscription list is in his handwriting. Wm. W. McKaig says his subscription was taken by Thomas Shriver, who then had the book—"that he paid for his stock so subscribed for, and received a certificate of stock from the plaintiff." This witness also states that the defendant subscribed when he did. T. J. McKaig says he "was present when the subscription to said stock was made by the defendant." This witness, likewise, testifies, that "the plaintiff made the plank road, from Cumberland to West Newton, in the years 1851 and 1852, at a cost of about one hundred and twenty thousand dollars, and has had toll-gates on the road in both States, and has been collecting tolls thereon ever since."

The testimony of Wm. Wickard is, that he subscribed for one share of the stock of the plaintiff, on which he paid one dollar in money at the time of subscribing. That Mr. Shriver, the president of the company, afterwards called on him to collect the instalments from the other subscribers in Cumberland, with the understanding, that he, the witness, was to receive as his compensation, a certificate for the share of stock for which he had subscribed. That he promised to collect the instalments from the subscribers in Cumberland, on this and the several subscription lists, and deposite the money collected in the Cumberland bank of Allegany, to the credit of the plaintiff; that some of the subscribers paid in full, others in part only. He called on defendant twice for his subscription—he thinks in 1851 or 1852—the defendant promised to pay it, but did not do so, he told witness he had not the money, and requested him to call again. Wickard says, the certificate for the share he subscribed for was issued to him, and he was paid in part for his services in money. That the plank road has been constructed from Cumberland to West Newton, about seventy miles in length. Part of the road, about seven

miles, lies in Maryland, and the balance in Pennsylvania. The part in Maryland, has been constructed upon the bed of a turnpike known as the Cumberland and Somerset Turnpike Road.

Edwin T. Shriver testifies, that the plaintiff had an account in the Cumberland bank of Allegany, of which the witness was cashier; that the money collected by Wickard was deposited in said bank, to the credit of said plaintiff, and checked out by Thomas Shriver, as its president, and by the secretary of said company; that Thomas Shriver was actively engaged in performing his duties as president for nearly two years.

The witness, John Beall, says he subscribed for shares in the capital stock of said company, which he paid for, and obtained a certificate of stock from the company. The company purchased machinery from him, and his stock was paid for in that way.

Without offering any proof on his part, the defendant prayed the court to instruct the jury, "that there is no evidence in the cause to show, that the plaintiff was authorized to enter into the contract offered in evidence by the plaintiff in this cause, even if they shall believe that the same was executed by the defendant, and that therefore their verdict must be for the defendant." This prayer the court granted; to which ruling the plaintiff excepted. And by this appeal the subject is presented to us for revision.

The appellee insists, that the court were right in granting the prayer, because the charter of the corporation was not produced, and, in its absence, there was no evidence of the powers conferred by it. The letters patent, he says, only proved the fact, that the appellant was a corporation; but with what powers, or for what purposes does not appear. Nor does it even appear that the corporation was authorized to construct a plank road, or indeed, any road. The mere name is no proof of the objects for which the charter was designed. And the fact, that the road was constructed, is no proof that the company had power under its charter to construct it. And, indeed, it is evident, that its powers were exceeded, because the charter in Pennsylvania could give no authority to build a road and

erect toll-houses, &c., in Maryland, where there is no act of the legislature granting the power to do so.

The appellee further insists, that conceding the charter gave the plaintiff authority to make such a contract in Pennsylvania, as that given in evidence, still it does not appear from the proof in the cause, that the plaintiff had authority to make the contract in this State. The view taken on this point, by the appellee's counsel, is, that although a charter granted by one of the United States may authorize the corporation to make contracts in that State, which are consistent with the design and nature of the corporate body, still, similar contracts, if made in a different State, cannot be sustained or enforced in the courts of the latter State; unless it is shown by the charter itself, that by the true construction of its language, it gave authority to make such contracts in the State where they are thus made.

In *Angel & Ames on Corp.*, 139, *(Ed. of* 1832,) whilst considering what contracts in general may be made by a corporation, they say, that "having been made for a *specific* purpose, it cannot only make no contract forbidden by its charter, which is, as it were, the law of its nature, but, in general, can make no contract which is not necessary, either directly or incidentally, to enable it to answer that purpose. In deciding, therefore, whether a corporation can make a particular contract, we are to consider, in the first place, whether its charter, or some statute binding upon it, forbids or permits it to make such a contract; and if the charter and valid statutory law are silent upon the subject, in the second place, whether a power to make such a contract may not be implied on the part of the corporation, as directly or incidentally necessary to enable it to fulfil the purpose of its existence, or whether the contract is entirely foreign to that purpose." See 8 *G. & J.*, 318 & 319.

And at page 145, *Angel and Ames* say, "when the charter or act of incorporation, and valid statutory law, are silent as to what contracts a corporation may make, as a general rule, it has power to make all such contracts as are necessary and usual in the course of business, as means to enable it to attain the object for which it was created, and none other. The

creation of a corporation for a specified purpose, implies a power to use the necessary and usual means to effect that purpose."

The prayer of the defendant presents the question, whether there is any evidence tending to show, that the plaintiff had authority to enter into the contract sued upon?

The suit is instituted in the name of "The Wellersburg and West Newton Plank Road Company," which is the name of the corporation as appears in the letters patent, issued by the governor of Pennsylvania; in which he recites, that an act of the General Assembly of that State, "provides for the organization of a company, by the name, style and title of 'The Wellersburg and West Newton Plank Road Company,' subject to all the provisions and restrictions of an act, entitled 'An act regulating turnpike and plank road companies;'" and that "the stipulations, conditions and things in the said act, regulating turnpike and plank road companies, directed to be performed, have in all respects been fully complied with." And in the letters patent the governor declares, that in pursuance of the power and authority given to him by law, he does create and erect the subscribers to the stock of said company, and also those who should thereafter subscribe, into one body politic and corporate, to have all the privileges and franchises incident to a corporation; and the said subscribers and those who should afterwards subscribe, their successors and assigns, are generally "to be invested with all the rights, powers and privileges, with full force and effect, and to be subject to all the duties, requisitions and restrictions specified and enjoined in and by the said acts of the General Assembly, and all other laws of the Commonwealth."

It is also in proof, that the defendant subscribed for eight shares of stock; that sundry other persons were subscribers, some of whom paid in part and others in full; and that certificates of stock were issued by the plaintiff to some of those whose subscriptions were taken by Thomas Shriver, the president of the company, by whom the subscription of the defendant was taken.

The proof likewise shows, that the plaintiff constructed a

plank road at a cost of about one hundred and twenty thousand dollars; and has, from the time of its construction, had toll-gates on the road, and has been collecting tolls thereon.

From the matters appearing in the letters patent, and shown by the proof, it surely is not an unwarrantable inference, that the plaintiff was created a body corporate, for the purpose of constructing a plank road by means of subscriptions for stock.

The letters patent declare in express terms, not only that those who were, at the date of the letters patent subscribers to the stock, but also all those who should afterwards become subscribers, should be one body politic and corporate. This necessarily gave the company authority to take subsequent subscriptions for stock. And the evidence before us justifies the inference, that the defendant was a subsequent subscriber. He is not mentioned in the letters patent, and his name and two others are the last three on the list given in evidence. It also appears, that the number of shares of stock taken upon the list, exclusive of the defendant's and the two subscriptions after his, exceed the number of shares mentioned in the letters patent, as having been subscribed for up to that time.

There is some evidence then, that the plaintiff was an incorporated company, for the purpose of constructing a plank road by means of stock, and that the charter gave authority to the company to take subscriptions for stock after the date thereof. There is also some evidence, that the defendant and others did take stock from Thomas Shriver, the president of the company, after the corporation had been created. The defendant's contract thus being a subscription for stock of the company, is a contract which was necessary and usual, as means for carrying into effect the purpose of such a charter.

Under such circumstances we cannot say the court below did right in granting the defendant's prayer.

The defendant's counsel have contended, that supposing the letters patent and the other evidence might be sufficient to show authority in the plaintiff to make this contract in Pennsylvania, still, it is necessary to show, that it could be made in Maryland, and the plaintiff has failed to do so. We think, however, that the letters patent conferred the power of mak-

ing such a contract in Pennsylvania, and that our act of 1834, ch. 89, sanctions the like power in Maryland.

The 1st section of that act provides, "that any insurance company not chartered by the laws of this State, which shall effect or shall have effected insurance upon any property real or personal, or upon life or lives, within this State, and *any corporation not chartered by the laws of this State*, which shall transact or shall have transacted business within this State, shall be deemed to hold and exercise franchises within this State."

The 2nd section makes provision for instituting suits, in the courts of our State, against such corporations, "upon contracts of insurance on property or lives within this State, or on *any dealing or transaction* in this State."

This act is a general authority, (if such authority did not exist before,) to any corporation not chartered by our State, to make contracts here, which are necessary to carry into effect the purposes of the charter, and not prohibited by it or by some valid law. And we are of the opinion, that under the present charter, the act of 1834, authorized the plaintiff to take subscriptions for stock in Maryland; we not being aware of any rule of law, or act of our legislature, in any manner applicable to such contracts, or to the charter of the plaintiff, which denies the right to make such contracts.

When speaking of the effect of this Maryland statute, in delivering the opinion of the Supreme Court, in the case of the *Bank of Augusta vs. Earle*, 13 *Pet. Rep.*, at page 592, Chief Justice Taney says, "by a law passed in 1834, that State has prescribed the manner in which corporations not chartered by the State, 'which shall transact or shall have transacted business' in the State, may be sued in its courts upon contracts made in the State. The law assumes, in the clearest manner, that such contracts were valid, and provides a remedy by which to enforce them."

The appellee says, the plaintiff was bound to produce the act of the General Assembly of Pennsylvania, which provides for the organization of the company, and, in its absence, the court was right in instructing the jury, that there is no evi-

dence to show the plaintiff was authorized to enter into the contract.

It will now be proper to inquire whether the plaintiff was bound to produce the act, as insisted upon by the appellee, or whether the production of the letters patent is not sufficient to sustain the contract, without showing the act itself.

In *Agnew vs. The Bank of Gettysburg*, 2 *H. & G.*, 478, the bank brought an action of *assumpsit* on a promissory note, which was tried upon the general issue of *non-assumpsit*. After all the evidence had been given the defendant prayed the court to instruct the jury, that from the evidence offered the plaintiff was not entitled to recover. This prayer was refused, and the appellate court affirmed the decision.

The defendant contended, that under the general issue the plaintiff was bound to show its corporate existence; and that the evidence adduced for that purpose was insufficient.

No proof of the charter or act of incorporation was produced, except letters patent issued by the governor of Pennsylvania, creating the corporation, in a manner very similar to that made use of in the present instance. The court admitted that, on the general issue, the action could not be maintained, unless it was shown that by law the plaintiff had been effectually created a corporation. But it is manifest, that the letters patent were considered as sufficient evidence that the bank was duly incorporated.

It was urged in argument on the part of the defendant, that the evidence offered to prove the corporate existence was insufficient, because the act of the legislature of Pennsylvania, under authority of which the governor professed to have acted, should have been produced. The recital in the letters patent, it was contended, did not prove the existence of the law; and admitting the law to exist, still, as the governor had a specially delegated power, it was necessary that the power should be strictly pursued: and the court could not decide whether it was so pursued or not unless the law was before them. And as it was not recited in *hæc verba*, the governor may have misconstrued the law.

In answering these views, the court say on page 494, "but

Plank Road Company *vs.* Young.

in any aspect which can be given to the case, can this act of the governor be classed among the cases of special authorities, and subjected to all the limitations and restrictions which judicial determinations have put upon the execution of such power? It is on his part neither the exercise of a judicial or ministerial authority, but the fulfilment of a high executive trust and confidence; and it would certainly be demanded by that comity which is due from one sovereign State to another, that we should presume, until the contrary is proven, that the public acts of the chief magistrate of such State, purporting to be in execution of the laws, were legitimate acts, and within the scope of his powers as such officer, until the contrary is established by the proof of the laws themselves, by which it should be made to appear, that he had overstepped the boundaries prescribed to him."

By the decision in that case, the Court of Appeals held, that the matters stated in the letters patent were to be considered as true until the contrary should be proved; and that the letters patent were sufficient evidence of the corporate existence of the Bank of Gettysburg.

The letters patent, in the present case, must therefore be regarded as establishing the corporate existence of the plaintiff; and as there is no proof inconsistent with, or contradictory to the matters set forth in them, they are to be taken as true.

The record shows, that the first prayer of the plaintiff was granted by the court, with the consent of the defendant. In this prayer the portions of evidence intended to show, that the plaintiff had given authority to Thomas Shriver to obtain subscribers, are stated, and the court is asked to instruct the jury, that if they believe the evidence therein stated to be true, "then they may also find that the said Thomas Shriver, and those who assisted him in taking said subscriptions, were authorized by said plaintiff to take said subscriptions." Consenting to the granting of this prayer is a concession that there was evidence, proper to be submitted to the jury, tending to prove that the plaintiff did authorize Thomas Shriver to take the subscription of the defendant.

Plank Road Company vs. Young.

The charter, in general terms, gives authority to take subscriptions for stock, without specifying in what particular manner it shall be done. Nor has the defendant offered any proof, showing that the mode adopted by the company is at variance with any law applicable to the subject. Would it be proper in such a case, to decide "there is no evidence to show that the plaintiff was authorized to enter into the contract?" We think not; especially, when by signing the contract, the defendant has given his assent to the mode adopted by the company, to carry into effect the general power conferred by the charter. In *Angel & Ames on Corp.*, 144, it is said, "if a corporation is authorized to raise money on promissory notes for a particular purpose, or if, as is frequently the case with other than banking institutions, it may receive notes in the course of its proper business, evidence may be admitted in the one case in favor, and in the other against, the corporation, to impeach the notes, by showing that they were issued for another purpose, or received in the course of business improper or forbidden to it. As in ordinary cases, *ut res magis valeat quam pereat*, the presumption is always in favor of the validity of the contract; or, in other words, it will be presumed that the debt was due, or the note or other security given in the lawful course of business, until the contrary is shown."

For the reasons stated, we think the court erred in granting the defendant's prayer, consequently the judgment must be reversed and a procedendo awarded. This renders it unnecessary to say any thing in relation to the second, third and fourth prayers of the plaintiff.

*Judgment reversed and procedendo awarded.*

(Decided January 7th, 1859.)