GEORGE W. DAVIS *vs.* THE WEST SARATOGA
BUILDING UNION, No. 3.

*Right of a Building Association to issue its Promissory Note—A bona fide holder of a Note for value, without Notice.*

The West Saratoga Building Association, became incorporated under the general Corporation Law, "for the accumulation of a fund by the savings of the members thereof, sufficient to enable them to purchase for themselves respectively, real or leasehold property, and generally for the purpose of a building association, and subject in all particulars to the limitations relating to corporations, which are contained in the general laws of the State." A member of the association obtained from it a loan, secured by a mortgage; but instead of receiving the money, took its promissory note for the amount. When this note was about to become due, the association drew two notes, signed by its officers, with the intention of having them discounted, for the purpose of raising money to pay the first note. One of these notes was discounted, through the agency of a broker, and not having been paid at maturity, was protested and suit was instituted thereon by the holder. HELD:

1st. That the Building Association was authorized under its charter, to issue the promissory note sued on.

2d. That if the note were transferred before its maturity, for a valuable consideration to the holder, who received it *bona fide*, without knowledge of any restrictions imposed upon its disposition by the makers, he was entitled to recover thereon, notwithstanding they may have been deceived and defrauded by the broker through whose agency it was discounted.

APPEAL from the Court of Common Pleas.

The appellant purchased from Henry Brocker, a broker, a promissory note, dated 21st of December, 1868, for $600, drawn by the appellee, payable, three months after date, to the order of William Heck, and by him endorsed. The note was signed by the officers of the appellee, who had before signed and issued notes which had been paid by the appellee, and it had been the habit for notes to be given in the same

manner and paid at maturity. Heck had previously executed to the appellee a mortgage, and instead of receiving the money had taken its promissory note for $1,200; when this note was about to become due, the note upon which this suit was brought, together with another note of the same amount were drawn, payable to the order of Heck, and by him endorsed, and delivered to Brocker, with the intention of having them discounted for the purpose of raising the money to pay the note given to Heck, as aforesaid. Brocker received the money from the appellant, but never paid it over. This note was protested for non-payment at maturity, and suit was instituted thereon by the appellant.

*Exception.* The plaintiff offered the following prayer, which was rejected by the Court:

"If the jury believe from the evidence that the note sued upon in this case was signed by Leonard Myers, August Conradas and William Heck, that they were at the time of said signing the president, treasurer and secretary of Saratoga Building Union, No. 3, and that said note was issued for the purpose of raising money to pay the obligations of said Union, which had been given to a member who borrowed money from it, for the return of which he had executed a mortgage to said Union, and that the said note was endorsed by William Heck, the payee, and then sold by *a broker or agent of defendant* to whom it had been delivered by the said officers to the plaintiff, and that the plaintiff is the holder thereof in good faith, for value paid by him therefor, then the plaintiff is entitled to recover."

The defendant offered four prayers — three were rejected and the following, the first, was granted:

That the paper writing, bearing date the 21st of December, 1868, and signed by Leonard Myers, President, August Conradas, Treasurer, and Wm. Heck, Secretary, filed in the proceedings as the plaintiff's cause of action, is not in law the promissory note of the defendant, and the plaintiff cannot recover upon it.

The Court also verbally instructed the jury " that there was no evidence in support of the plaintiff's claim, and they must therefore find for the defendant." To the rejection of his prayer, and the granting of the defendant's first prayer, as also to the verbal instruction given by the Court, the plaintiff excepted; and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, MILLER and ROBINSON, J.

*Samuel Snowden,* for the appellant.

A building association, incorporated under the law of 1868, ch. 471, can make and issue a promissory note for some purposes. Corporations must act within the powers conferred upon them by the organic law under which they are incorporated. These powers are divided into principal or express powers, which are such as are expressly conferred upon it by its charter, and are therefore easily ascertained by examination of that instrument; and accessory or incidental powers, which are such as are usual and necessary to carry into effect the purposes for which it was established, and to attain the object of its creation. *Wellesburg & N. P. R. Co. vs. Young,* 12 *Md.,* 477; *Mayor, &c., of Balto. vs. Balto. & Ohio R. R.,* 21 *Md.,* 91.

The Act of 1868, ch. 471, sec. 48, enlarges the common law rule, and enacts " that the corporations formed thereunder may do every act or thing not inconsistent with law which may be necessary or proper to promote the objects, designs and purposes for which they may be formed." And if the means employed are reasonably adapted to ends for which the corporation was created, and tend directly to their accomplishment not amounting to the transaction of a separate, unauthorized business, they come within its implied powers. *Wilwarth vs. Crawford,* 10 *Wend.,* 342; *Madison & Plank R. Co. vs. Watertown & Plank R. Co.,* 5 *Wis.,* 173; *Clarke vs. Farrington,* 11 *Wis.,* 306; *Angell & Ames on Corporations, ch.*

8, sec. 12. And these implied powers must be performed by its agents. *Smith vs. Eureka Flour Mills*, 6 *Cal.*, 1; *Strauss vs. Eagle Ins. Co.*, 5 *Ohio* (*N. S.*) 59. And unless restrained by their charters, corporations have the right to contract debts, make notes and accept drafts, as incident to the particular business in which they are authorized to engage. *Ketchum vs. Buffalo*, 14 *N. Y.*, 356; *Rockwell vs. Elkham Bank*, 13 *Wis.*, 653. The making of a promissory note is incident to every corporation. *Lucas vs. Pitney*, 3 *Dutch.*, 228.

It has been decided that a company formed for the manufacture of glass—*Mott vs. Hicks*, 1 *Cowen*, 513; an Insurance Company, *Barker vs. Mechanics' Ins. Co.*, 3 *Wend.*, 96; a Mining Company, *Mass. vs. Oakley*, 2 *Hill*, (*N. Y.*,) 265; a Commission Company, *Munn vs. Commission Co.*, 15 *Johns.*, 44—may make and issue promissory notes. In all these cases, the power to issue the note was implied.

It is not contended that the right to issue a promissory note is within the express terms of the act of incorporation, but, " that it is a power *not inconsistent with law*, and *necessary and proper to promote the objects, designs and purposes*" for which it was formed, *and* is therefore implied. The appellee was formed, as is declared in its certificate, for the purpose of the accumulation of a fund, by the savings of its members, sufficient to enable them to purchase for themselves, real or leasehold property, and generally, for the purpose of a building association. By sec. 87 of the law, a corporation formed for a building asociation, "may, at any time, in advance of the period of time at which such corporation may cease to exist, according to the plan contained in the original articles of association, advance to any member thereof, for such premium as may be agreed upon, the sum which he would be entitled to receive upon the dissolution of the corporation, or may purchase his shares," &c.

Where a corporation can lawfully contract a debt, it may make and issue its promissory note for the payment thereof— *Abbott's Digest of Cor.*, page 116, secs. 1 *and* 4, and authori-

ties there cited. The issuing of a promissory note is a means *reasonably adapted* to the ends for which the association was formed, and tends directly to their accomplishment, and there is nothing in the law under which it is incorporated, or in its constitution, which prohibits the exercise of this power.

The promissory note sued upon in this case, being signed by the officers of the appellee, to whom are entrusted, by its constitution, the management of its fiscal concerns, is *prima facie* the note of the Union. *Frye vs. Tucker,* 24 *Ill.,* 180 ; *Elwell vs. Dodge,* 33 *Barb.,* 336; *Downing vs. Mt. Wash. Co.,* 40 *N. H.,* 230. No seal is required in order to bind the corporation. *Angell & Ames on Corp.,* 174 ; *Abbott on Corp.,* 723, *sec.* 15 ; *Union Bank vs. Ridgely,* 1 *H. & G.,* 326.

If it be, and the appellant thinks that it is, within the implied powers of the appellee to borrow money for the express purpose of accommodating its borrowers—to issue promissory notes to its members instead of money, upon receiving from them mortgages upon real or leasehold property—to contract a debt for the payment for shares purchased by it from its members, or to pay for withdrawals—then it may lawfully make its promissory note for any of these purposes, and the note sued upon being made and issued for the purpose of raising money to pay a debt already incurred for an advance to one of its members, is the valid and binding contract of the Union, and the written and verbal instruction of the Court below is therefore erroneous.

If, then, the appellee has the power to issue a note for *any purpose,* the *bona fide* holder of its notes before maturity is not bound to ascertain whether they were issued for a *lawful purpose.* For where a corporation has power under any circumstances to issue negotiable securities, the *bona fide holder* thereof has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper. *The Royal British Bank vs. Turquand,* 88 *English Com.*

290          MARYLAND REPORTS.

Davis vs. West Saratoga Building Union, No. 3.

*Law Rep.*, 326; *Gelpeke, et al. vs. City of Dubuque,* 1 *Wall.,* 175, [203]; *Commissioners of Knox County vs. Aspinwall,* 21 *Howard,* 539; *Farmers' Loan and Trust Company vs. Curtis,* 3 *Selden,* 466.

The appellant being a *bona fide* holder, comes within the rules of law in reference to such, which are so well settled. *Story on Prom. Notes,* (*Ed.* 1868,) *secs.* 195 *and* 196 *and notes;* 1 *Parsons on Bills and Notes, secs.* 254, 255.

*Edw. W. Salmon,* for the appellee.

The prayer offered by the plaintiff below is defective in two respects particularly :

1st. In assuming that Myers, Conradas and Heck, the signers of the paper writing sued on were the agents of the defendant, and authorized to sign on its behalf.

2d. In assuming that the said paper writing was sold by a *broker* or agent of the defendant.

There is no proof in the cause that the signers of the note were authorized to do so, nor is there any proof that it was sold by a *broker,* or by an agent of defendant. On the contrary, the proof is distinct and clear that Brocker, to whom the note was delivered, was authorized, *not by the appellee,* but by Myers, Conradas and Heck, to ascertain and find out some person who would discount said note, and report the name of such person, who would be willing to discount it *to them* (the signers of said note,) or to either of them, and that such *only* was the authority conferred by them on said Brocker. Without authority, therefore, he sold the note to the appellant at the ruinous rate of fourteen and a half per cent.

It is clear, from the testimony, that Brocker exceeded the authority conferred upon him by the signers of the note. And " whoever deals with a special agent is bound to acquaint himself with the limitation and extent of the authority conerred upon him, and acts at his own peril." *Story on Contracts, sec.* 384; *Mayor, &c., of Baltimore vs. Reynolds,* 20 *Md.,* 1.

The appellant had ample time, between the 19th (the day on which the note was first brought to him) and the 21st, the day on which he bought it, to acquaint himself, by proper inquiry, as to the limitation and extent of Brocker's authority. There is not the slightest evidence that he made any inquiry or used any means so as to acquaint himself. He purchased the note without the least caution on his part, and with every facility within his power for acquainting himself with the real state of the case.

As to the right of Davis to maintain an action on the note, reference may be had to *Byles on Bills of Exchange,* 16 *Law Library,* 92, 93.

Was the Court below right in granting the first prayer of the defendant?

The position which the appellee seeks to maintain under its first prayer, and which was granted by the Court below, presents for consideration the question whether the West Saratoga Building Union, No. 3, is legally bound by the promissory note sued upon in this case.

The note sued upon is not under the seal of the corporation, and the power to issue notes not having been given by Statute, the appellee is not bound thereby. 1 *Leigh's N. P.,* 7.

The appellee was incorporated under the Act of 1868, ch. 471, and possessed the powers *specially* conferred by its charter, under that Act, and subject to the restrictions also imposed by the Act.

The corporation was formed for the "accumulation of a fund *by the savings of the members thereof, sufficient* to enable them to purchase for themselves, respectively, real or leasehold property, and generally for the purpose of a Building Association." This is the object, purpose and condition under which *only* they have, by section 40, become a corporate body. It constitutes the compact made by the corporation with the members. By it they are assured that the "*savings of the members*" was to constitute the *only* source for the accumulation of the fund for the purchase for themselves of real or

leasehold property. Not one word is therein used which, even by implication, can be construed so as to justify the issuing of notes, and having them discounted, whereby to obtain the accumulation of a fund.

The Legislature has effectually guarded against the exercise of any such power as that claimed, by providing (section 51 of the Act of 1868) that " no corporation shall possess or exercise any corporate power, excepting such as is *conferred by law*, and such as shall be *necessary* to the exercise of the powers so acquired." And it cannot be seriously contended that the issuing of notes to be discounted, at a most ruinous rate of interest, could be necessary for the object of the charter, to wit: the *accumulation* of a fund from the *savings* of the members.

STEWART, J., delivered the opinion of the Court.

The note, upon which the appellee in this case was sued, purports to be a negotiable instrument, signed by certain persons, professing to be the officers of the West Saratoga Building Union, No. 3, and payable to Heck, who endorsed the same, and it is alleged was passed to the appellant, the plaintiff below, for a valuable consideration before maturity. There was proof tending to show that the parties who signed the instrument, were the president, treasurer and secretary of the corporation, and that they had before issued notes of the same sort, one of which the appellant had received, and which was paid.

The note in question, it appears, was drawn with a view of raising money to meet an antecedent obligation, which the company had incurred for one of its members, to whom it had loaned money and taken a mortgage to secure the re-payment.

It is maintained by the appellee, that as a corporation it was not authorized by its charter to issue the promissory note in question, and that the officers of the company, who issued the note, transcended their powers in doing so; and secondly, that the note was entrusted to Brocker, with the date left blank, to prevent its negotiability, merely for the purpose of

ascertaining if the money could be obtained upon the note, and to make report to the officers to that effect, but that he was not authorized to transfer the note to the appellant or other party.

If these officers of the company had the power to issue the note, and did do so, and placed it in the hands of Brocker, with special instructions as to the use to be made of it, and the note was transferred by Brocker to the appellant, before its maturity, for a valuable consideration, who received it *bona fide*, without knowledge upon his part of the restrictions imposed upon the party by the makers of the note, he is entitled to recover thereon, as an innocent holder who had purchased the note for value, although the officers of the company may have been deceived and defrauded by the party to whom they had confided the note.

" A *bona fide* holder for value, without notice, is entitled to recover on any negotiable instrument, which he has received before it became due, notwithstanding any defect or infirmity in the title of the person from whom he derived it, as for example, even though such person may have acquired it by fraud, or even by theft, or by robbery. *Story on Prom. Notes, secs.* 191, 192.

The corporation in question, according to its certificate, bearing date 15th of May, 1868, required by the 37th sec. of ch. 471 of the Act of 1868, became incorporated, under the general law for that purpose, under the name of West Saratoga Building Union, No. 3, " for the accumulation of a fund by the savings of the members thereof, sufficient to enable them to purchase for themselves, respectively, real or leasehold property, and generally for the purpose of a building association, and subject in all particulars to the limitations relating to corporations, which are contained in the general laws of the State."

Under sec. 18 of ch. 471, of this general Act for incorporations, we take it, this particular corporation, would be embraced with class 5, for the formation of homestead or

building associations.   The 2d section of this law, restricts all incorporations thereunder, except for banking purposes, from issuing any note or other evidence of a debt, to be used as currency.

The purport of this provision, was to prohibit all corporations, except the banks, from issuing paper for circulation as currency, and not to restrict them from giving promissory notes, as evidence of debt, where they were otherwise authorized.

The sections from 44 to 50, inclusive, define the general powers of the corporations, created under this law, and prescribe the general regulations thereof, except in the cases, where there may be special provisions, applicable to particular corporations.   Amongst the powers conferred, the 48th section, authorizes the corporations to acquire by purchase, or in any other manner, and to hold, use and dispose of, any property, real, personal or mixed, in or out of the State, which may be necessary and proper to enable them to fulfil the purposes of their incorporation, and generally to do every other act or thing, not inconsistent with law, which may be necessary or proper to promote the objects and purposes of the corporation.   The 51st section, prohibits corporations, from exercising any corporate powers, except such as are conferred by law and such as are necessary to the exercise of the given powers. The 59th section, makes the stockholders of any corporation individually liable to the creditors of the corporation, to the amount of new stock, for all debts and contracts made by the corporation, until the whole amount of the capital stock, shall have been paid in and certificate thereof made and filed.   Section 77, subjects all corporations, formed thereunder, to all such provisions of future legislation as may be made applicable to such corporations.   Section 87, made applicable to corporations formed for the purpose of loaning money on real or personal property, may, at any time, in advance of the period of time, at which the corporation may cease to exist, advance to any member thereof, for such premium as may be

agreed upon, the sum which he would be entitled to receive upon the dissolution of the corporation or may purchase his share.

The authority vested in this corporation, by the law of its charter, according to the nature of its business, is unquestionably sufficient, to enable it to borrow money, and to make loans to its members with a view to accomplish the purpose of its formation; and, endowed with this right, there is nothing in the character of the organization, or inconsistent with the public law or policy, to prevent it from employing the usual legal methods of effecting this purpose, subject to the sole restriction, that it shall not issue a paper currency. The powers of the corporation comprehend, not only the express grants, but extend to all the means necessary for the exercise of the powers conferred—*sec.* 51. This incidental power, without that section, the corporation would have possessed, by implication, for the purpose of effecting the objects designed by its charter, according to the nature of its business, and not in conflict with the public law. *Wellersburg & W. N. P. R. Co. vs. Young*, 12 *Md.*, 476. If it had occasion, in the course of its dealings and transactions, to effect the loan proposed in this instance, the company had the right, according to their discretion, through its officers, to give this promissory note for that purpose, or, if the company owed any antecedent debt, if their creditor preferred such evidence, it might issue a promissory note for the payment of the same.

" All persons are competent to bind themselves as makers of a promissory note, who are not incapitated by some special provision or disability created by law. So are corporations, acting within the scope of the particular business of the corporation." *Story on Prom. Notes, sec.* 61. " Express authority is not indispensable to confer such a right—it may be implied as a usual and appropriate means to accomplish the objects and purposes of the charter." *Story on Prom. Notes, sec.* 74. If the charter of this company prohibited the issue of such a note, in terms, or had prescribed any particular

mode in which to acknowledge its indebtedness, or if the nature of the corporation itself forbid the creation of any debt of this sort, parties dealing with it, or its officers, would do so at their peril, and subject to such limitations. *Mayor and C. C. of Baltimore vs. Baltimore and Ohio R. R. Co.*, 21 *Md.*, 51.

It would be an unwarrantable construction, when this company is empowered to borrow money, without specification, that would restrict it to any special method; and there is no sound reason why it should not be allowed to use the most convenient measure for that purpose not inconsistent with the public law. *Wellersburg Plank Road vs. Young*, 12 *Md.*, 484. The general law does not restrict this company from issuing the promissory note in question, and it has not been shown that by any of its by-laws, or other proceedings, that the officers of the company were prohibited from issuing the note, and we do not see, therefore, why the appellant may not be permitted to recover, if there has been no fraud on his part or knowledge of any fraud on the part of others connected with the transaction, before he became the holder of the note.

If the evidence shows that the appellee, through its officers, issued the note, and the appellant, in good faith, received it for value, the appellee is bound to pay it, although their agent may have transcended his instructions and defrauded the company in giving currency to the note, yet, if the appellant was not aware of such facts, he is not to be precluded thereby from his right of recovery as a *bona fide* holder.

We think the appellee's prayers ought to have been refused, and the prayer of the appellant granted.

*Judgment reversed, and new trial awarded.*

(Decided 8th March, 1870.)