THOMAS J. McKAIG and WILLIAM W. McKAIG, Trustees, and others, *vs.* WILLIAM PIATT, and others.

*Evidence—Competency of a person Interested to Testify in relation to transactions with the Deceased person against whose estate the proceedings are instituted—Limitations—When the pendency of a Suit saves a claim from the bar of the Statute—When the Pendency of one Suit in Equity is a bar to another.*

In September, 1842, G. H conveyed by deed to W. M and T. M, in trust, several tracts of land as security for sundry single bills given by G. H to H. B & Co. The trustees in August, 1848, sold one of these tracts and from the proceeds of the sale paid a portion of the debt secured. The remaining tracts continued in the possession of G. H    Judgments having been recovered against him by several persons, executions were issued and the sheriff levied on the land and advertised it for sale.   At this juncture, the trustees, in February. 1853, together with H. B & Co., filed a bill in equity charging that the judgments on which the executions issued were fraudulent and void and praying an injunction against the sale.   The bill also prayed the enforcement of the payment of the balance of the indebtedness, secured by the deed of trust, to H. B & Co. To this bill G. H filed an answer admitting the debt to H. B & Co., the correctness of the deed of trust and alleging his ignorance of the balance due H. B & Co.   The injunction was granted and no further proceedings were had in the cause.   G. H remained in possession of a portion of the land until his death in 1865, when his heirs took possession.   In August, 1867, his heirs, one of them as a judgment creditor, filed a bill in equity alleging that the debt due H. B & Co. had been paid ; and, if not paid, was barred by limitations and lapse of time ; and that the purposes of the deed of trust of September, 1842, had been accomplished ; and praying that any cloud on the title by reason of the deed of trust might be removed, the property sold, and the proceeds distributed among the heirs and creditors.   The trustees, W. M & T. M, who were made defendants in this bill, moved to dismiss the bill on the ground of the pending of the suit instituted by the bill of February, 1863, alleging that the complainants were barred from proceeding by the injunction and protesting against a sale.   A commission was issued and the testimony of T. M and W. M taken under it.   The complainants

excepted to its admissibility. The Court sustained the exceptions to the testimony, overruled the motion to dismiss, and decreed a sale. The sale was made, and an auditor stated two accounts one disallowing and the other allowing the claim of H. B & Co. Exceptions were taken to these accounts by the respective parties, and the Court entered a decree sustaining the account disallowing the claim. On appeal from the several rulings of the Court. HELD:

1st. That the question of the amount due from the estate of G. H to H. B & Co. involving transactions between the trustees and G. H, deceased; and the trustees being benefitted by increasing that amount, they were real parties and not competent witnesses.

2d. That the whole effect of the suit of August, 1867, not being attainable by the suit of February, 1853, the former suit should not be dismissed.

3d. That the complainants in the bill of August, 1867, were bound by the admissions of G. H to the bill of February, 1853, and the pendency of that bill was a continuing demand sufficient to save the claim of H. B & Co. from the bar of the Statute of Limitations and they were entitled to participate in the distribution of the proceeds of the sale to the extent of any portion of the debt that was still due.

It is a good plea to a bill in equity that there is another suit depending in the same Court for the same cause. It is however requisite that the whole effect of the second suit should be attainable in the first.

APPEAL from the Circuit Court for Allegany County, in Equity.

George Hoblitzell, of Alleghany county, in 1842, was indebted to Hopkins Bros. & Co., in the sum of $5,010.95. To secure this sum, he passed to Hopkins Bros. & Co. four single bills, each for the sum of $1,252.73, payable respectively June 1st, 1843; June 1st, 1844; June 1st, 1845, and June 1st, 1846, with interest on each from the day of their date. On the same day, (September 13, 1842,) he conveyed to Thomas J. McKaig and W. W. McKaig, certain real estate in trust, to secure the payment of these bills. The conditions of the deed of trust having been broken by the failure to meet some of these notes, the trustees on the 26th of August, 1848, sold a portion of the property described in the deed as the "Island," to John Hunter. Certain other portions of the property included in the deed, were sold under executions

issued on judgments rendered anterior to the date of the deed.    George Hoblitzell remained in possession of the residue.

On the 19th of February, 1853, the trustees and the *cestuis qui trust*, Hopkins Bros. & Co., filed a bill in equity, numbered 974, Eq. Docket, against George Hoblitzell, James H. Hoblitzell, John T. Edwards, and John M. Blocher, sheriff, charging the indebtedness of George Hoblitzell, exhibiting the deed of trust, and alleging that the trustees had sold the "Island" with the consent of George Hoblitzell.    The bill further alleged that the net proceeds of the sale had been applied to the payment of the debt due Hopkins Bros. & Co., but declared that the sum was insufficient to pay the entire debt, and that there was still a large sum due.    The bill proceeds to say that there were certain judgments, which it was claimed were liens on the property, and that execution had been issued on these judgments, and the property was about to be sold.    These judgments, the bill alleges, were fraudulent and void.    The bill prays that the parties be enjoined from further proceedings in execution of the judgments, and prays a decree to settle the title and sell the property, and to distribute the proceeds amongst those entitled, including Hopkins Bros. & Co.

To this bill, George Hoblitzell, among others, answered. He admitted his indebtedness to Hopkins Bros. & Co., and that the deed of trust exhibited was the original deed.    He conceded that the "Island" had been sold, but professed ignorance as to the amount still due Hopkins Bros. & Co. He denied that the judgments were fraudulent and void, and submitted to the judgment of the Court.

The injunction prayed was issued, and restrained the defendants from selling or disposing of any of the property that might be seized by virtue of the writs of *fieri facias* mentioned in the bill, and "also from taking or having any or further proceedings on the judgments or writs of *fieri facias.*" No further proceedings were had under this bill, and George

Hoblitzell remained in possession of the property until his death, in 1865, when his heirs took possession.

In August, 1867, some of these heirs—one of them claiming also as a judgment creditor—filed a bill against Thomas J. McKaig and W. W. McKaig, trustees under the deed of trust, and others, praying for a sale of the real estate of which George Hoblitzell died seized, and for a distribution among the heirs, after paying the judgment creditor and other creditors. The bill, after making the usual allegations, charged that the debt due from George Hoblitzell to Hopkins Bros. & Co., had been fully paid, and that the deed of trust had fully performed and accomplished the purposes for which it was intended; and that said deed of trust, not having been released, was a cloud on the title to the property. The bill further charged that, if the debt secured by the deed had not been fully paid, all recovery of it was barred by limitations and lapse of time. On this bill the Court passed an interlocutory decree. On the 17th of February, 1868, the defendants, Thomas J. McKaig and W. W. McKaig, trustees, filed a motion to dismiss the bill on the ground that a prior suit, involving the matters in litigation, was pending, and on the 25th of February, 1868, filed their answer to the bill of complaint. In this answer they set out the indebtedness of Geo. Hoblitzell to Hopkins Bros. & Co., and the deed of trust. They alleged that the debt had never been satisfied, that they had sold, in 1848, under the deed of trust, the property called the "Island," for the sum of about $5,000; that of this sum, they appropriated a part to the purchase of the dower-right of the wife of George Hoblitzell, and applied the residue to the satisfaction of the debt due Hopkins Bros. & Co., and that such residue was insufficient. The answer denied that the claim of Hopkins Bros. & Co., was barred by limitations, and set up the pending suit of February, 1853, as removing the bar of the Statute. And, finally, it plead the pendency of that suit as a bar to this suit, and the injunction order as a bar to the complainants proceeding further.

In their replication, the complainants again plead the bar of the claim by the Statute of Limitations, and denied the efficacy claimed for the suit of February, 1853.

Commissions to take testimony were issued, and Thomas J. McKaig and W. W. McKaig were examined on behalf of the respondents. Exceptions were taken to this testimony by the complainants.

On the 18th of August, 1868, the Court filed an opinion, signed by R. H. Alvey and Thomas Perry, Judges. By this opinion, the testimony of Thomas J. McKaig and W. W. McKaig was excluded from the case; the pendency of the bill in equity of February, 1853, was held not to be a bar to the suit of August, 1867. On the 19th of August, 1868, a decree for the sale of the property was filed. The sale was duly made, reported to the Court, and the case was submitted to an auditor to state an account. Two accounts were stated, one allowing and one disallowing the claim of Hopkins Bros. & Co. Exceptions were taken to these accounts by the respective parties. On the 26th of May, 1869, the Court passed an order overruling the exceptions to, and ratifying the auditor's report distributing the proceeds of the sale to the exclusion of the claim of Hopkins Bros. & Co.

From the several rulings of the Court, the trustees, Thos. J. and W. W. McKaig, appealed.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ROBINSON, J.

*Thomas J. McKaig, Jr.,* and *Thomas J. McKaig,* for the appellants.

The objection to the testimony of Thomas J. McKaig and Wm. W. McKaig, is not well taken, because they are mere nominal parties. *Smith vs. Wood,* 31 *Md.,* 293; *Cooke vs. Cooke's Excr.,* 29 *Md.,* 538; *Lingan vs. Henderson,* 1 *Bland.,* 268; 1 *Fonblanque's Eq.,* 268.

The prayer of the petition, for dismissing the bill in this case, ought to have been granted. The object of the bill in No. 974, *was to obtain a decree to sell the real estate of George Hoblitzell for distribution amongst creditors and those entitled thereto.* The parties are the same, because George Hoblitzell was a party in No. 974, and his children and heirs are the same as their ancestor, and not different. Piatt, who is a creditor in the second bill, could have filed his claim in the first case. The only difference in parties is, that the second bill fails to make Hopkins Bros. & Co. the *cestuis que trust* parties, who were parties in the first bill, *and who were necessary parties in the second.* The heirs could have attained the same result in the first bill that could be attained in the second, because the real estate in both bills is the same. *Latimer vs. Hanson,* 1 *Bland.,* 51; *Fenwick vs. Laughlin,* 1 *Bland.,* 474.

The filing the bill in No. 974, the summoning of the parties and their answer to the bill, *stopped the running of the Statute of Limitations. Parker vs. Fassitt,* 1 *H. & J.,* 337, and cases collected in 2 *U. S. Digest,* 820 *and* 821. In the case of *Price vs. McDonald,* 1 *Md.,* 403, the cause of action was dated in 1808; the bill was filed in 1817; the bill had been pending over thirty years when the administrator *d. b. n.* came into the case, and yet the Court enforced an equitable lien of over forty years standing.

There was no abatement of the suit even against George Hoblitzell. He had answered the bill and admitted the deed and balance due on the bonds, and refused to swear that the unsold property would even sell for the balance due. See the *Act of* 1842, *ch.* 229.

*J. H. Gordon,* for the appellees.

The appellants and their *cestuis que trust* have slept too long upon their alleged rights, and the presumption of payment is now complete and irresistable. *McKnight vs. Taylor,* 1 *How.,* 161–169; *Rex vs. Stephens,* 1 *Burr.,* 434; *Clark's Extrs. vs. Hopkins,* 7 *Johns.,* 556; *Jackson vs. Pratt,* 10 *Johns.,* 387;

1 *Story Eq.*, sec. 529 ; *Bowman vs. Wathen*, 1 *How.*, 189–197 ; *Hovenden vs. Ld. Annesley*, 2 *Sch. & Lef.*, 629–640 ; *Beckford vs. Wade*, 17 *Ves.*, 96 ; *Piatt vs. Vattier*, 9 *Peters*, 416 ; 2 *Story's Eq.*, sec. 1520 *and note* ; *Hepburn's case*, 3 *Bland*, 110 ; *Mooers vs. White*, 6 *John. Ch. R.*, 369 ; *Clabaugh vs. Byerly*, 7 *Gill*, 364 ; *Gardner vs. Simmes*, 1 *Gill*, 425 ; 1 *Phillips' Ev.*, 677 ; 2 *Greenleaf Ev.*, 528 ; *Christophers vs. Sparke*, 2 *Jac. & W.*, 228 ; *Bander vs. Snyder*, 5 *Barb. S. C. Rep.*, 72 ; *Blackburn vs. Squib*, *Peck's Rep.*, 60 ; *Frazer vs. Perdrieau*, 1 *Bailey*, 172 ; *Rogers vs. Judd*, 5 *Verm.*, 236 ; *Mitchel vs. Mitchel*, 1 *Gill*, 82, 83 ; *Clagett vs. Salmon*, 5 *G. & J*, 344 ; *Allender vs. Riston*, 2 *G. & J.*, 99 ; *Jackson vs. Sackett*, 7 *Wend.*, 94.

Independent of the *"presumption of payment,"* which alone must necessarily carry the case, *the whole debt is absolutely barred by the Statute of Limitations*, which the appellees have plead and on which they rely.

But the appellants, in their efforts to get rid of the plea of limitations and lapse of time, rely upon an old injunction-suit brought by them on the 19th of February, 1853 ; but this suit cannot avail them for several reasons :

1st. Because an interlocutory decree was passed in the case at bar before the appellants filed their answer, in which they set up the old suit. The plea of the pendency of the former suit is purely a dilatory matter, in the nature of a plea in abatement ; and being such, it cannot be pleaded or relied on after the passage of the interlocutory decree, nor can it be shown for error to reverse a decree. *Story's Eq. Pl.*, sec. 708 *and n.* 5, *and sec.* 411 ; *Luckett vs. White*, 10 *G. & J.*, 490, 491 ; *Gibbs vs. Clagett*, 2 *G. & J.*, 28–39 ; *Mitford's Pl.*, 85.

2d. The old suit, relied on as a former suit depending, can constitute no defence to this suit, because it must be averred and shown that the two suits were instituted for the same purpose, and that the effect of the subsequent suit can be had in the former suit. *Story's Eq. Pl.*, sec. 737, 739 ; 2 *Daniel's Ch. P. & P.*, 721 ; *Law vs. Rigby*, 4 *Brown*, 60 ; *Pickford vs. Hunter*, 5 *Simons*, 122, (9 *E. Ch. R.*) ; *Mitford's Pl.*, 246, 247.

McKaig, *et al. vs.* Piatt, *et al.*

3d. The former suit is no bar to this suit, because it should be distinctly averred, and so the fact must be, that the former suit is still actually depending. *Story's Equity Pl.*, sec. 737; *Cooper Eq. Pl.*, 272; 2 *Daniel Ch. P. & P.*, 725; *Mitford's Pl.*, 247.

That suit not being a depending suit, it is no defence to the present suit. *Story's Eq. Pl.*, secs. 328, 329, 330, 354; *Mitford's Eq. Pl.*, 46, 59.

And in order to make it a depending suit, it was absolutely necessary and incumbent upon the appellants to show that the heirs appeared to the former suit, or that the appellants made them parties by process. *Mitford's Eq. Pl.*, 247; *Anonymous*, 1 *Vernon*, 318; *Cooper's Eq. Pl.*, 272; 2 *Daniel's Ch. P. & P.*, 725; *Act of* 1820, ch. 161, secs. 4 *and* 5.

The only effect of the Act of 1820, chapter 161, sections 4 and 5, and of the Act of 1842, chapter 229, is to give a more simple and less expensive mode for reviving and putting a suit in motion than by "bill of revivor," and this mode is an *additional* remedy; a "bill of revivor" can be used now as well as it could before the Act of 1820, and the only object of a "bill of revivor" is to revive a suit which has for some cause abated. *Franklin vs. Franklin*, 1 *Md. Ch. Dec.*, 342, 345; *Hall vs. Hall*, 1 *Bland*, 130–133 *and notes; Allen vs. Burke*, 1 *Bland*, 544; *Glenn vs. Clapp*, 11 *G. & J.*, 5; *Steuart vs. Stockett & Carr*, 6 *Gill*, 430; *Alexanders' Ch. Prac.*, 105–109; *Glenn vs. Helb*, 17 *Md.*, 281.

4th. The writ of injunction, issued in the old suit, is no bar to the present suit, because the writ simply restrained certain parties from selling certain property under certain executions, and the parties to this suit are not the parties enjoined, and the property was not sold under the executions, but was sold by trustees under a decree passed by the same Court that issued the injunction. *Iveron vs. Harris*, 7 *Vesey*, 251–257; *Fellows vs. Fellows*, 4 *John., N. Y. Ch.*, 24; 1 *Madd. Ch.*, 126.

5th. The former suit is no defence to the plea of "*limitations*" and "*lapse of time*," because George Hoblitzell filed his

answer to this former suit on the 29th of March, 1855. That suit was abandoned as soon as this answer was filed; and the abandonment is conclusively shown by the fact that no proceedings whatever were taken in the suit after Hoblitzell filed his answer, and the Statute of Limitations commenced to run long before the former suit was instituted, and it having been abandoned, and not having been revived since the death of George Hoblitzell, it takes no time out of the Statute of Limitations, nor does it rebut the presumption of payment by lapse of time. *Young vs. Mackall,* 4 *Md.,* 371–374.

MAULSBY, J., delivered the opinion of the Court.

The appeal in this cause is from the decree for a sale of the property, passed on the 19th day of August, 1868, and from the order overruling the exceptions of the appellants, and ratifying the auditor's report distributing the proceeds of sale, to the exclusion of the claim of the appellants, passed on the 26th day of May, 1869.

One of the points raised, and insisted on, is that by the bill filed by the appellants and Messrs. Hopkins, in February, 1853, against George Hoblitzell, James H. Hoblitzell, John T. Edwards and George M. Blocher, sheriff, numbered 974 on the equity docket, the complainants in this cause are barred from maintaining it, and the pendency of the former is pleaded as a bar.

The object of the former bill is well defined by the appellants, in their answer to the bill in this cause, to be "for the purpose of enforcing the payment of the balance of the indebtedness mentioned in said deed of trust." Ancillary to that object was the prayer for an injunction, which was issued, and which restrained the defendants therein from selling or disposing of any property that might be seized by virtue of the writs of *fieri facias* mentioned in the bill, and "also from taking or having any or further proceedings on the judgments, or writs of *fieri facias.*" In this cause the complainants are some of the heirs-at-law of said George Hoblitzell, and the

17                          v 34.

defendants are the other heirs-at-law, one of the complainants, claiming that he is also a judgment creditor of said George Hoblitzell, who was dead at the time of filing the bill, August, 1867; and the object is to sell the real estate of the deceased ancestor, for distribution of the proceeds of sale amongst his heirs-at-law, after payment of said judgment. That judgment is not either of those enjoined. For the purposes of this cause, the rule on this subject is sufficiently stated in *Seebold vs. Lockner and wife,* 30 *Md.,* 133, where the authorities are referred to. The Court says "it is a good plea to a bill in equity that there is another suit depending in the same Court for the same cause. It is however requisite that the whole effect of the second suit should be attainable in the first." "It thus appearing that the whole effect of the present suit cannot be attained by the appellees in the other case, we think the plea was properly overruled," although part of the relief sought in both cases was the same. In this cause no relief is sought in respect of the judgments or *fieri facias* enjoined in the former. We concur therefore in the opinion of the Circuit Court on this point, that the pendency of the cause, No. 974, was not well pleaded in bar of proceedings in this, and are of opinion that the decree of 19th of August was properly passed.

The next question is on the order of May 29th, 1869, finally distributing the fund, and excluding the appellants from participation in it. The learned Associate Judge who passed this order, and the auditor who stated the account, appear to have understood the opinion of the Court filed on the 18th of August, 1868, and accompanying the decree of the 19th, as concluding the claim of the appellants, on the grounds of *laches,* limitations, or lapse of time. We do not so understand the opinion. It said in express language "if there is really any portion of the debt still due that can be enforced against the estate of the deceased, it will be competent to the parties to file the claim in this cause, and participate in the distribution of the proceeds of the sale of the

real estate sought to be sold: the proceedings in this case being as well for the benefit of creditors, as the heirs of the deceased."

The bill in No. 974 was, on its showing, for a legitimate object. It was an assertion of the claim of the appellants made in the only forum which could give any effective relief towards realizing the claim. George Hoblitzell answered and substantially admitted that there was a balance due. These appellees are bound by that admission. This bill was pending when George Hoblitzell died. No proceedings had been taken by either party to it to finally dispose of it. No suggestion of his death was made in that cause. He might, in his lifetime have brought it to an end by laying a rule, further proceedings or otherwise. After his death, his representatives might have suggested the death, and so compelled the complainants to make new parties, or to abate the suit. But it was not abated when the bill in this cause was filed, and was still pending, and part of the proceedings in it was the answer of George Hoblitzell admitting a balance due. It must be considered as a continuing demand by the appellants, sufficient to save their claim from the bar of the Statute.

We do not think that, under the circumstances of this case disclosed by the record, the appellees can avail themselves of the defence of *laches*, limitations, or lapse of time, and the presumptions therefrom arising. And we concur in the opinion of the Circuit Court, of August 18th, 1868, that the appellants are entitled to participate in the distribution of the proceeds of sale of the real estate, in this cause, to the extent of any portion of the debt that may still be really due.

Before determining what portion of the debt, if any, is still due, it becomes necessary to pass upon the exceptions to the admissibility of the evidence of the appellants. We do not think that they are competent witnesses in respect of the balance due. That question involves the transactions between Hoblitzell, deceased, and themselves. To whatever extent his

payments to them may be reduced, they are directly benefited. To the extent of payments made by him to them, or of moneys realized by them from the trust property, they may be liable to the *cestuis que trust*. We do not think, therefore, that they are nominal parties merely.

There is no allegation in the record of payments made by Hoblitzell to, or of proceeds of the trust property received by, the Messrs. Hopkins, except through the appellants. The Messrs. Hopkins might have been properly made parties to the cause. After the final decree they asked, by petition, to be made parties, which was denied by the Court below, and they did not appeal. No question as to parties was made by the appellants by their answer, or otherwise. Nor could any such question affect the point now being considered. If Messrs. Hopkins were parties, with the appellants, that fact would not tend to relieve the position of the appellants from that of interested parties—parties, not nominal merely, but having a direct interest in the result of the inquiry how much had been received by them for the use of the Messrs. Hopkins, and consequently what is the actual amount of the balance due on the single bills from the estate of Hoblitzell.

The authorities referred to by the appellants, 1 *Bland*, 268 ; 29 *Md.*, 538, and 31 *Md.*, 293, do not, in our judgment, sustain their position, and we think that the exceptions to their evidence were properly sustained.

The cause will be remanded, to give the parties an opportunity to produce further proof, if they may think proper, and it be accessible to them. And by way of indicating the points to which their proof ought to be directed, as well as of expediting the termination of the cause, in case further proof may not be obtainable, we will proceed to express our views on the case as now presented by the record.

The claim of the appellants consists of the three single bills filed with the auditor, due respectively in June, 1844, June, 1845, and June, 1846, with interest from date, which is 13th of September, 1842. The signature of George Hoblit-

zell to each of those is proved by the testimony of Hiram B. Wolfe, a competent witness. The only evidence for the appellees is the admission in the answer of the appellants to the bill in this cause, that on the 29th of August, 1848, they sold, under the deed of trust, property for the sum of about $5,000. With this admission is coupled an allegation that this sale included the right of the wife of George Hoblitzell, then living on said lands, and who was not a party to the deed of trust; and that after purchasing and paying for the right of the said wife, they applied the net proceeds of the sale to the payment of the debt in the deed of trust mentioned. The right referred to was a potential right of dower, the husband being then alive. The answer does not disclose what sum was paid by them for said potential right of dower. In the testimony of one of the appellants appear two papers, marked respectively "Hunter Deed" and "Agreement," for the purpose of showing that they did not sell for the sum of $5,000, but for a lesser amount, and consequently that the statement in the answer to that effect was by mistake, and also that the sum of $700, was paid to the wife for her potential right: although that paper, the "Hunter Deed," by itself, would go to show that the $700, mentioned in it was paid by Hunter the grantee. With the exclusion of the testimony of the appellants, however, both these papers, at all events as now in the record, must be excluded, and the admission of the answer, in the absence of any other competent proof, must be taken to charge the appellants with $5,000, as of the date of 29th of August, 1848, to be applied to the payment of the indebtedness specified in the single bills. The effect of the proof contained in the present record would then be, in our opinion, to charge the appellees, or the proceeds of sale of the real estate, with the three single bills, $3,658.19, and interest from 13th of September, 1842 to 29th of August, 1848, and to credit that gross amount of principal and interest with $5,000 as received by the appellants on the latter day, and the balance remaining, with interest from 29th of August,

.1848, to the day of sale, together with a due proportion of the interest received by the trustees to make the sale, would be the sum due to the appellants, unless the appellees may pro-.duce other proof of further payments. That they may have an opportunity to do so, and also that the appellants may have an opportunity to establish, by competent proof, that in fact they sold the trust property for a less sum than that set forth in their answer, and that the statement therein was by mistake, or that there was paid by them out of the purchase money received by them a sum certain for the potential right of dower, or that the sum paid therefor ought, in justice, to be deducted from the purchase money chargeable to them, and that both parties may have opportunities to furnish any other proof tending to show the true balance due on the single bills, the cause will be remanded to the Circuit Court, where proceedings may be had in conformity with this opinion.

The decree of August 19th, 1868, will be affirmed, and the order of May 26th, 1869 will be reversed, the costs of this appeal to be paid out of the trust fund in the Circuit Court.

*Decree affirmed, order reversed,*

*and cause remanded.*