## CIRCUIT COURT OF BALTIMORE CITY.

Filed May 14, 1906.

---

LLOYD WILKINSON, INSURANCE COMMISSIONER OF MARYLAND,

VS.

THE BALTIMORE EQUITABLE LIFE INSURANCE COMPANY OF BALTIMORE CITY.

---

*George M. Brady* for exceptants.
*Carroll T. Bond* for receivers.

HARLAN, C. J.—

The auditor's account in this case was filed on July 29th, 1904, and in the report accompanying the same will be found the following:

"The receivers are charged with the amount of their sales as per their report. The fund thus coming into the hands of the receivers arises from the proceeds of sale of the deposit made by the defendant corporation, with the State Insurance Commissioner 'as a guarantee for the payment of policies of insurance issued by said' defendant corporation (Art. 23, Sec. 128, Public General Laws of Maryland, Acts 1894, Chapter 256). No claims have been filed herein for policy losses, nor can any accrue, the policies having been practically destroyed by the appointment of receivers herein on April 14th, 1904. In this court, however, in the case of Wilkinson, Insurance Commissioner of Maryland, vs. The Provident Life Annuity Co., etc., Docket A—386—1902, it has been held, ratifying the report of the auditor in that case, in which the ruling of the American Casualty Company's case, 82 Md., 535, is quoted, that this fund is liable for the unearned premiums. A number of claims have been filed herein, in many instances the claims being filed for all premiums paid. The policies have no cash surrender value, not having been in existence the necessary period of time. Upon breach of its contracts, 'the policyholders thereupon became entitled to damages for that breach, and these damages are the value of the destroyed policies.' * * * 'The values of the destroyed policies are provable, and according to well settled rules, these values consist solely of unearned or return premiums,' The claims of policyholders are, therefor allowed only for unearned premiums and the auditor has endeavored to compute the value of the policies accordingly. Many of the claims are for premiums paid on policies not in force on April 14th, 1904. These are clearly not entitled under the above rule; ac-

cordingly they are not allowed. After
the payment of unearned premiums in
full a very considerable balance re-
mains in the hands of the receivers.
This is applied to the payment of com-
missions, costs, expenses, payment of
the claims of general creditors filed
herein and the balance to be held by
the receivers for future determination
and distribution."

The balance herein referred to, to
be held for future determination and
distribution is $2,207.09. The auditor
suspended for full proof five claims
amounting to $929.50, and did not al-
low twenty-five claims amounting to
$2,817.48 "appearing on their face to
be for return of premiums on policies
not in force on April 14th, 1904, or
which the auditor is advised are filed
for return of premiums on policies not
in force on April 14th, 1904," which
the auditor states, "are not included,
not being entitled under the theory
of this account." The names of these
claimants and the amount of their
claims are set forth in the account.

Exceptions were filed, by some of
those whose claims were disallowed,
to the ratification of the account, but
on August 10th, 1904, the counsel for
the exceptants filed the following
agreement:

"The undersigned, counsel for ex-
ceptants to the auditor's account filed
in the above entitled cause, hereby con-
sent to the immediate ratification of
the said auditor's account.

The said exceptants reserving, how-
ever, their right to presecute their ex-
ceptions to being excluded from the
said account, and reserving their right
to be paid out of the balance remain-
ing in the hands of the receivers as
shown in the said account, upon estab-
lishing their rights and upon proper
orders of court."

Accordingly, on the same day on
which this agreement was filed, the ac-
count was ratified.

On the petition of the exceptants to
take testimony, leave to take testimony
was granted. Testimony was taken
and returned, and on August 28th,
1905, it was ordered by the Court
that "exceptions to the auditor's ac-
count be set for hearing on the 11th
day of December 1905." Under this
order the case came on to be heard.
In the meantime some additional
claims for a return of premiums had

been filed, and to a number of claims
the defendant specially excepts, be-
cause the same "did not accrue within
three years prior to the filing of the
same."

The theory upon which the claims
of the exceptants were disallowed
was, that their policies had lapsed by
forfeiture for non-payment of premi-
ums prior to the appointment of re-
ceivers. The claimants do not dispute
the contention that if they were ever
holders of valid and binding policies,
their policies had been properly lapsed,
but their contention is that they never
were holders of valid and binding
policies; that the so-called policies is-
sued to them and upon which the
several premiums were paid were en-
tirely and always null and void, being
beyond the power of the corporation—
*ultra vires;* that they never were in-
sured, and that the payments to the
corporation as premiums can be re-
covered back as money had and re-
ceived to their use.

The first question therefore is,
whether, assuming the policies to be
simply *ultra vires,* and the policy-
holders to have had no benefit there-
under, can premiums paid thereon be
recovered back where not barred by
limitations or laches? This question,
it seems to me, under the authorities
must be answered in the affirmative.

Maryland Hospital vs. Foreman, 29
Md., 524.

Heironimus vs. Sweeney et al., 83
Md., 146.

The next question is, whether the
policies or any of them are *ultra vires?*
The following facts, which have an im-
portant bearing upon this question,
are either undisputed or fully estab-
lished.

On October 16th, 1900, the Balti-
more Mutual Life and Annuity Com-
pany of Baltimore city was incorpo-
rated as a mutual company under the
laws of the State of Maryland, and its
charter filed in the Superior Court of
Baltimore city.

No deposit of any amount, as a guar-
antee fund, was ever made with the
State officials, other than a deposit
of eleven First Consolidated Mortgage
Bonds of the United Railways and
Electric Company, of value not more
than $12,000, on December 10th, 1901.

On January 13th, 1902, the case of
Fiery and another against the Balti-

404

more Mutual Life and Annuity Company was instituted in the Circuit Court No. 2 of Baltimore City, for the purpose of securing for the complaining parties, who had received contracts of insurance from the defendant corporation, a return of the money which they had paid to said defendant as premiums.

On October 17th, 1903, the charter of said company was amended. The certificate changing the company from a mutual into a joint stock company, placing its capital stock at $250,000, and changing its name to the Baltimore Equitable Life Insurance Company, was duly filed in the Superior Court of Baltimore City.

On January 14th, 1903, the case of Myers against the mutual company, the joint stock company and Lloyd Wilkinson, Insurance Commissioner, was instituted in Circuit Court No. 2 of Baltimore City, for the purpose of securing the appointment of a receiver for the corporation, the winding up of the affairs and a return to the complainant of the money paid by him to the company as a premium upon the policy issued to him.

No bonus tax of any character or amount was ever paid by either company, except that of the joint stock company on March 19th, 1903, the amount being one-eighth of one per cent. of the authorized capital stock of $250,000.

On April 14th, 1904, the present case of Wilkinson against the joint stock company was instituted in this court. the defendant's answer, admitting the complainant's allegations of insolvency, etc., receivers were appointed to wind up the corporation.

Returning now to the question whether any of the policies of the exceptants are *ultra vires*, it appears that the policies are not all of the same form, and that they were issued at different dates, but they have in the argument and briefs of counsel been divided into classes, and the question of *ultra vires* has been presented with reference to each of these classes.

The policy of J. B. Clayton has been selected as the representative of one class. This policy was issued on June 18th, 1901. It provides as follows:

"In consideration of the payment of premiums as herein provided, and the statements and agreements in the application herefor, which are a part of this contract, and in further consideration of his good will and co-operation in promoting the interests of the company.

The Baltimore Mutual Life and Annuity Company of Baltimore City

promises to pay at its home office in the city of Baltimore, Maryland, unto John Bell Clayton, of Marble Valley, County of Augusta, State of Virginia, an annuity of six hundred dollars, for every year he may live after reaching the age of sixty-five years and four months, payable quarterly, commencing within 90 days after maturity.

Upon the death of the assured, whether before or after said age, the annuity will be paid to Mary M. Causland Clayton, wife of assured, during widowhood, thereafter to assured's children during minority."

It is claimed that this policy is *ultra vires*, because at the time it was issued, the defendant, according to its own contention, was organized as a *mutual* company under Section 128 of Article 23 of the Code of Public General Laws, as amended by the Act of 1894, Chapter 256; and by the express terms of this statute, companies formed under it could issue "no certificate for the payment of a greater sum than $1,000 upon any one life."

It is not denied by defendant that at that time it had no power to issue certificates for the payment of more than $1,000 upon any one life, but it is claimed that the annuity of $600, to be paid as promised in this policy, did not transgress this limitation.

It seems to me, however, after a careful consideration of the statute, that all annuity policies which involve a promise that might result in an obligation to pay upon any one life a greater sum than $1,000 must be treated as forbidden within the spirit and intent of the statute. I hold, therefore, that J. B. Clayton's policy and policies like it of other exceptants, are *ultra vires*.

The policy of Frank E. Brown, which was issued on May 3rd, 1901, and which contained in substance the same promises as that of J. B. Clayton, except that the amount of the annuity was $400, instead of $600, may be taken as the representative of another class of policies. I am of the opinion that this policy also, and others like it for the

same amount must be considered as forbidden by the statute in question, and *ultra vires*.

The policy of R. S. Carswell may be taken as the representative of another class of policies. This policy provides for the payment to the insured's executors, administrators or assigns, the sum of $1,000, within sixty days after the receipt by the company of proofs of death of the insured. It is not open to the objection urged against the two preceding classes, but it is claimed that the policy is in excess of the corporate powers in that Section 128 of Article 23, under which the defendant, according to its own contention, was organized, provides for only two kinds of companies —(1) stock companies with a paid up capital of at least $10,000, and (2) mutual companies, with power to issue policies only upon the co-operative assessment plan. The defendant was not at the time of the issue of this policy, a stock company, and the policy contains no provision for assessment.

I am of the opinion that the contention of the exceptants that a mutual company organized under this section can only issue policies containing the co-operative assessment feature, is correct. The words of the section referred to, so far as it is necessary to quote them, are: "Organizations as described, etc. * * * may be formed on the mutual co-operative assessment or stock plan, if on the *latter* plan, shall have a paid-up capital of at least $10,000; and such companies, whether formed on the mutual co-operative assessment or stock plan, shall be, etc., * * *."

It seems manifest, from the use of the words, "the latter plan," that only two plans are here contemplated; and of the *latter* plan is the stock plan, then the *former* plan must be not only a mutual, but a mutual co-operative assessment plan. As I understand that none of the policies of any of the exceptants in this case contain the co-operative assessment feature, it follows that all of these policies must be held to be *ultra vires*.

This conclusion makes it unnecessary to consider the other reasons alleged, why some of these policies should be considered *ultra vires*, and (it may be said) also would have made it unnecessary to consider the question whether the policies of J. B. Clayton and Frank E. Brown were *ultra vires*

because involving a promise to pay a greater sum than $1,000 upon any one life.

I have not felt it necessary to consider in this opinion the effect of a payment of premiums by any of the exceptants after the mutual company was fully converted into a stock company, as no suggestion has been made that any of them stand in this position.

The next question which it seems necessary to consider is the defense of limitations, because there is no suggestion of any laches separate and apart from limitations. It seems to be well settled that any creditor not named as complainant in the bill, may come in after the institution of the suit and make himself a party thereto by simply filing the voucher of his claim with the clerk; and as against any claim so filed, the statute runs down to the time it was thus filed—that being regarded as the time of the commencement of the suit with respect to such claim.

Hall vs. Ridgely, 33 Md., 310.

It has also been decided in Maryland that the pendency of another suit upon the claim is a continuous demand and suspends the running of the statute.

McKaig vs. Platt, 34 Md., 249.

Applying these decisions, I must hold that as to each premium that was paid on any of these *ultra vires* policies, the statute of limitations began to run from the date of the payment; and, if more than three years had expired before the claim for the return thereof was filed in this case, the claim was barred by limitations, unless the claimant had previously, and before the expiration of said period, become as to such claim a party of the suit of Fiery et al. against the Baltimore Mutual Life and Annuity Company, in Circuit Court No. 2, or a party to the suit of Myers and others against the Baltimore Mutual Life and Annuity Company, in Circuit Court No. 2.

I will sign an order referring the papers back to the auditor in order that the claims of these exceptants to a share in the balance of the fund in the hands of the receivers, in whole or in part, shall be allowed or disallowed, by an application of the rulings herein made, the costs to be paid out of the fund.