WILLIAM F. HEIRONIMUS et al. *vs.* JOHN B. SWEENEY and JOHN L. BIKLE, Receivers. TRYON H. EDWARDS et al. *vs.* THE SAME.

*Savings Institution—Distribution of Assets—Priority of Special Depositors Over Members—Compounding Interest on Deposit—Power of Corporation to Borrow Money—Ultra Vires—Estoppel of Corporation to Repudiate Liability.*

Under the by-laws of a savings institution there were three classes of depositors : (1) Weekly depositors, who agreed to deposit a certain sum each week, and were entitled to dividends on the earnings of the institution. These were also members of the corporation, with a right to vote for directors. (2) Special depositors, who were entitled to receive such interest on their deposits as might be allowed by the directors. (3) Dime depositors, who were allowed interest at the rate of three per cent. The assets of the institution were not sufficient to pay all the depositors in full. Upon their distribution by receivers, *held*, that the special depositors were creditors of the institution and entitled to be paid in full, principal and interest, before distribution of the surplus to the weekly depositors, who were in substance the stockholders of the corporation.

A special depositor, under a contract allowing him three per cent. interest semi-annually on the amount of his deposit if not drawn out within one year, agreed with the corporation that these amounts of interest should remain and draw interest as new principal. *Held*, that such arrangement was unobjectionable.

The charter of the institution conferred upon it power to make all contracts, etc., and authorized the directors to provide for the admission of members, to regulate the receiving of deposits and pass all necessary by-laws. Under the by-laws adopted, the weekly depositors were made members, and deposits received from special depositors, as above set forth. *Held*, that the contracts made with the special depositors, which were in' effect interest-bearing loans, were not beyond the corporate powers of the institution.

A corporation has the power, without express authority therefor in its charter, to borrow money for the conduct of its affairs, whenever the nature of its business may render it proper.

The shareholders of the corporation having enjoyed the benefit of the money loaned by the special depositors under their contracts are estopped from alleging that such contracts were *ultra vires*.

Two appeals in one record from an order of the Circuit Court for Washington County, sitting in equity. The appellees were appointed by said Court receivers of the Washington County Savings Institution. In their first account, the assets then on hand were distributed among all the depositors equally. Certain special depositors then claimed that they were entitled to be paid out of the remaining funds the balance in full of their several special deposits and the interest thereon before any further payment should be made to the regular weekly depositors. The different kinds of depositors were provided for by the following by-laws of the institution :

" 1. All regular weekly depositors shall be members of this corporation, and be entitled to vote, each, at any election for directors.

" 2. The annual election for directors shall be held at the office of the institution, on the first Thursday in the month of May, between the hours of two and four o'clock in the afternoon. Ten days previous notice having been given thereof in one or more newspapers printed in Hagerstown.

" 7. Any person of legal age may become a weekly depositor in this institution to any amount not less than twenty-five cents ; minors and persons *non compos mentis* may become depositors through their guardians or trustees ; and all persons who desire, may become special depositors for a definite or indefinite period, and receive such interest on their deposits as the directors of the institution may think proper to allow.

" 8. Every weekly depositor shall be furnished with a book containing a duplicate of his or her account, and a copy of the by-laws of the institution.

" 9. The office of the institution shall be permanently located in Hagerstown, and shall be kept open from two to six o'clock every Saturday afternoon, for the purpose of receiving weekly deposits.

" 10. If any weekly depositor shall refuse or neglect to

make his or her weekly deposit at the proper time, he or she shall pay a fine of six cents for each and every dollar so remaining unpaid, or in the same proportion for a less sum than one dollar, unless the treasurer has notice that such deposit will be discontinued.

" 11. Any weekly depositor may draw out the whole of his or her deposits, by giving the treasurer thirty days' notice if the amount does not exceed fifty dollars, and if the amount is over fifty dollars, sixty days' notice will be required.

" 12. The president and directors shall, on the first Monday in January and July of each and every year, declare such dividend to the weekly depositors as the earnings of the institution will justify, after deducting the semi-annual expenses and setting apart a reasonable amount for a contingent or surplus fund.

" 13. At the expiration of three years the president and directors may declare such extra dividend from the contingent or surplus fund as to them may seem right and proper, and may continue to declare such extra dividend triennially thereafter."

The Court below (STAKE, J.), rejected the claim of the special depositors to preference, and ordered distribution to be made to them *pari passu* with the general or weekly depositors, and also rejected the claim of the appellant, Edwards, to interest on the accrued interest of his deposit upon the ground that the contract by which he was entitled to the same was not within the scope of the powers of a savings institution.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Wm. H. A. Hamilton* (with whom were *Buchanan Schley* and *Ernest Hoffman* on the brief), for Heironimus and other appellants.

Relying upon the security afforded by the amount of funds accumulated by the regular weekly depositors, the petition-

ers made a special deposit of their funds in the institution, agreeing to accept 3 per cent. interest and forego any participation in the dividends of the institution, although they were greater than 3 per cent. per annum, in consideration of the security of their investment and the certainty of the return to them of their specific deposits.

The appellants therefore contend that: 1st. The weekly depositors or members of the institution, as they are made by the by-laws adopted in pursuance of the charter, were and are the stockholders, just as the holders of stock certificates are the stockholders of an ordinary bank. *Morse on Banks and Banking*, vol. 1, sec. 3, vol. 2, sec. 617 ; *Morawetz on Private Corporations*, section 391 ; *Encyclopedia American and English Law*, vol. 21, p. 720. 2nd. The petitioners, as special depositors, were creditors of the institution, as holders of promissory notes issued by it would be : *Md. Savings Inst'n.* v. *Schroeder*, 8 G. & J. p. 110 ; *Beaver's Admin.* v. *McGrath*, 50 Penna. State, 488 ; *Fell's Point Savings Int. of Balto.* v. *Weedon*, 18 Md. 327 ; *Henry Miller* v. *David Austen et al.*, 13 Howard, 229. It can hardly be necessary to refer to authorities to sustain the position that in case of insolvency the creditors of such an institution as this (a *quasi* partnership) are to be preferred to the weekly depositors (the members) who hold the position of stockholders ; but the Court is asked to look at *Stockton* v. *The Mechanics' & Laborers' Savings Bank*, 32 N. J. Equity, p. 163 ; *Morse on Banks and Banking*, vol. 2, sec. 632 ; *Hall* v. *Parrish*, 59 N. H. 71.

*Tryon H. Edwards* (with whom was *Alexander Neill* on the brief), for T. H. Edwards, warden of Lydia Edwards *et al.*, appellants.

The test laid down by all the books and reported cases by which to determine who is a member of a corporation (or shareholder or stockholder, for each of these words is but a name for the same thing) is whether the person is entitled : 1st. To vote at corporate elections. 2d. To be voted for at said elections. 3d. To receive a proportionate

share of the corporate profits by way of dividends.   4th.
To receive a share of what is left at dissolution.   Mora-
wetz says, " shares " or " stock " as a piece of paper are
evidence of ownership of certain rights, but the shares
themselves or stock itself are the rights and duties which
appertain to membership in the corporation.   *Morawetz
Corp.* secs. 54, 43, 44, 45, 391.   The receiving money on
deposit, agreeing to repay it with interest, is really borrow-
the money.   *Chapman* v. *White*, 6 N. Y. 412 ; *Encyc. Law,
Banks*, vol. 2, p. 94, n. 1, and that is a contract which every
corporation has the right to make, even if it is not given in
its charter.   *Encyc. Law, Corporations*, vol. 4, p. 222 ;
*Thomp. Corp.*, sec. 5697–8.

But in this case the charter fully gives the power to re-
ceive deposits, and to regulate the manner of receiving them
by the by-laws, and the by-laws divide them into regular
deposits to receive dividends, and special ones to receive
interest, so that certainly there is no lack of power to make
the contract.   If it be objected that the by-laws say the
special depositors may receive such rate of interest as the
directors may allow, the answer is that it is not shown that
the directors did not allow the rate of interest contracted
for, and having been made by their duly elected officer the
contracts will, as against the corporation, be presumed to
be made at the rate allowed by the directors.   It was the
duty of the directors under their own by-law to exercise
their discretion and fix a rate of interest for these special
deposits.   In the absence of proof to the contrary it will
be presumed that they did fix the rate and that the rate
fixed is that allowed by the contract made by their duly
elected officer, he being their proper officer and their agent
to receive deposits.

According to the rule now generally adopted the corpor-
ation and its members cannot set up the defence of *ultra
vires* against the enforcement of a contract when it has re-
ceived and used the money obtained on the contract.
*Whitney Co.* v. *Barlow*, 63 N. Y. 62 ; 5 *Thompson on Cor-*

*porations*, sec. 6015 *et seq.* In the case at bar the corporation has had the money of the appellant and its interest from each half year when it accrued due; has used the money and the interest; has made and pocketed the interest on the principal and on the accruing interest, and nothing will do justice between the parties short of an enforcement of the contract on which the money was deposited, to-wit, its repayment with interest on its accrued interest.

The contract was made with the proper officer of the corporation. The treasurer of such a corporation is like a cashier of a bank, the proper officer to receive deposits. The charter itself and the by-laws show that it was never contemplated that the president or directors should receive deposits. And the treasurer was the only other officer. He was the only officer in the words of the charter "appointed to conduct and execute the business of said corporation." "The power to make the contract is inherent in the office of treasurer." *Corcoran* v. *Cattle Co.*, 151 Mass. 75; *Fay* v. *Noble*, 12 Cushing, 1; *Atlantic Bank* v. *Silk Co.*, 3 Met. 289; *Ellis* v. *Howe Sewing Mach. Co.*, 9 Daly, 82; *Bank* v. *Kain*, 1 Breese, 45; *Bond* v. *Bank*, 9 Met. 506; *Credit Co.* v. *Machine Co.*, 54 Conn. 389; *Fluckner* v. *Bank*, 8 Wheat. 338. And this rule has been held to extend so far as to bind the corporation even when the money did not come to it, but was embezzled by the treasurer. *Rowland* v. *Apoth. Assn.*, 47 Conn. 384. The only cases denying this power to be inherent in the office of treasurer are those concerning religious and social corporations, where the treasurer is a different sort of officer. Taggart was also the secretary of the corporation and as such the authorized organ of communication with the public. *Thomp. Corp.*, sec. 4696.

But the Court below also seeks to avoid this contract by saying that this corporation was a "savings bank," and therefore could not make a contract to receive a deposit at interest. A "savings bank" proper is really an institution which has power to have one kind of depositors only, that

is the one who puts in his money to have it invested, and he to take his share of the profits. But one corporation called " savings " must differ from any other as much as their charters differ. As said in *Morawetz on Corporations*, sec. 391, " The Courts will recognize the true position of the depositors, as they do the true position of shareholders, whenever this becomes necessary for the protection and adjustment of their equitable rights." In the *American and English Encyclopœdia Law*, vol. 21, p. 720, title Savings Banks, it is said, " By some Courts the relation between a savings bank and its depositors is held to be that of agent and principal ; by others, that of debtor and creditor ; by others, that the bank is a trustee for its depositors."

It will also be found on examining the Savings Bank General Laws, or the special charters in most all the States, that the corporation is a small permanent body to whom and their successors the ·charter is granted ; that this body is totally distinct from the depositors, and that depositors do not become members of the corporation or have any votes in it. And in cases of this sort of corporation it is generally held (for instance in Massachusetts, Connecticut and New York) that all depositors are creditors of the corporation equally and proportionately ; and that this relation of debtor and creditor is qualified when necessary by the theory that the corporation is the agent of each depositor. They have also been held (in Pennsylvania for example) to be purely charitable and eleemosynary institution ; and in other Courts to be like the old corporations sole, and like antiquarian societies and the College of Physicians and Surgeons. And the result of this combination of theories has worked out some decisions that are fearful and wonderful ; for example, in New York, that the broker who sold some bonds for a savings bank and whose bill for commissions and services and disbursements was $500 was a depositor to that amount and must take a dividend. The only safe rule must be that every case is to be decided on its own facts, and not by any general principle of savings

banks. Now this diversity of opinion does not arise from
the fact that the different Courts have taken a different view
of the same thing, to-wit: " A savings bank;" but from
the fact that the Courts have found the charters in each
different, and of course have decided each case on its own
charter. In some cases, of course, it has been held that
there could not be any special depositors, that all must be
general depositors, when the charter so provided; and in
some cases all depositors have been held to be members,
and in others all depositors have been held to be creditors,
and in others they have been held to be *cestuis que trustent*,
and therefore on an equal footing. An example of this
class is the case of *Stockton* v. *Mechanics, &c., Bank*, 32 N.
J. Eq. 163. It has been held time and again and every-
where that certificates of deposit in this form to bear interest
are really promissory notes. *Miller* v. *Austin*, 18 Howard,
218; *Poorman* v. *Mills*, 35 Cal. 118; *Hunt* v. *Divine*, 37
Ill. 137; *Howe* v. *Harbaess*, 11 Ohio St. 449; *Laughlin* v.
*Marshall*, 19 Ill. 390.

*Wm. J. Witzenbacher* (with whom was *Hy. Kyd Douglas*
on the brief), for the appellees.

The depositors being all equally victims of a misplaced
confidence, it is impossible to discriminate between them
when a division of the assets of the concern is contemplated.
Had all the accounts of the various classes of depositors
been kept separate and the funds arising from special deposits
been strictly invested for the benefit of such deposits alone,
and the proceeds of such investments been specially divided
and credited, to distinguish them from the others, and the
money derived from the other classes been likewise kept
separate by themselves, so that the agency assumed by the
bank would have been kept strictly within the limits of the
several duties confided to it, it can easily be seen that the
several funds thus in the hands of the bank would have be-
come impressed with a definite and distinct trust in favor of
the respective classes of depositors, out of whose deposits

such fund has been created. And this is especially true when we consider that the relation of the bank to its depositors is that of trustee and *cestui que trust.*

But we find in this particular case that the funds arising from the several classes of depositors have been indistinguishably mixed and mingled together, so that among the assets in the hands of receivers, it is impossible to distinguish what part thereof represents the proceeds of the special deposits, the weekly deposits, or the irregular deposits. The case is analogous to that of a conventional trustee having in his possession funds belonging to divers *cestuis que trustent,* who has intermingled the different funds so that none can be traced. Upon proceedings before an insolvent trustee administering the assets of such defaulter, what would be the canon of distribution among them? Plainly the rule, "Equality is Equity." This is the view taken by the New Jersey Court in *Stockton* v. *Mechanics' Bank,* 32 N. J. Eq. 5 Stewart, 164. See also *Vail* v. *Newark Sav. Bank,* 32 N. J. Eq. 627 ; *People* v. *Mech. Sav. Inst.,* 92 N. Y. 7 ; *Bunnell* v. *Collinsville Sav. Int.,* 38 Conn. 203 ; *Osborne* v. *Byrne,* 43 Conn. 155 ; *Newark Sav. Int.,* 28 N. J. Eq. 552 ; *Morristown Int.* v. *Roberts,* 42 N. J. Eq. 496 ; *Lewis* v. *Lynn Inst.,* 1 L. R. A. 785.

When an act can be referred to the legitimate exercise of a power granted, such act will never be contemplated as having been intended to have an effect beyond the scope of such power, or other than that comprised within the limits of such power. We have seen that the deposits in question were received within the legitimate scope of the bank's powers ; that the evidence shows that the deposits were made in conformity with the by-laws of the institution ; that the borrowing of money for lending the same again would be a violation of the charter. It must be presumed, where a transaction savors both of a compliance and a violation of power, that it occurred within the scope of the power and not in the attempted exercise of a non-existent power, at least unless the contrary plainly appears. But the contrary

does not appear in this cause. And again the deposit of Mr. Edwards, viewed as a loan, would be usurious and in violation of the statutes of the State. As the transaction can be made innocent, and the evidence shows that it was concluded in an innocent way, what ground then exists for transforming it into a nocuous proceeding, entirely beyond the conception of any of the parties to the cause at the time it was made, and to be enforced to give an unfair advantage over other innocent depositors.

BRYAN, J., delivered the opinion of the Court.

By order of the Circuit Court for Washington County, in Equity, receivers were appointed for the Washington County Savings Institution, a corporation. The questions in the present appeal arise on the distribution of the assets. By the by-laws there were three classes of depositors ; weekly depositors, special depositors, and dime or irregular depositors. Weekly depositors were those who agreed to make deposits not less than twenty-five cents, each and every week. Each of such depositors was furnished with a book containing a duplicate of his account and a copy of the by-laws of the institution. They were liable for fines if they failed to make their deposits at the proper time ; and they were entitled to such semi-annual dividends as the earnings of the institution should justify ; these dividends were to be declared by the president and directors. They were also members of the corporation, and entitled to vote at any election for directors. These provisions were made by the first, seventh, tenth and twelfth sections of the by-laws. The seventh section also declares as follows : " All persons who desire, may become special depositors for a definite or an indefinite period, and receive such interest on their deposits as the directors of the institution may think proper to allow." Dime or irregular depositors were permitted by sections fifteen, sixteen and seventeen. They were allowed to deposit at any time, any sum not less than one dime ; and they were allowed interest on their deposits at the rate of three per

cent. per annum, payable semi-annually, provided such de-
posits should have been made six months previously to the
declaration of dividends ; and after having received two
semi-annual dividends, they were allowed certificates of de-
posit bearing four per cent. interest.

The assets are not sufficient to pay all of the depositors
in full.    It then becomes our duty to ascertain  the order
and  proportion in which they ought  to be paid.    The four
appellants all belong to the class of special depositors.    Ed-
wards, in  November, eighteen  hundred and seventy-three,
deposited one  thousand and thirty dollars, and  received a
certificate from the treasurer, Taggart, signed by him in his
official capacity, in the following form :

   " OFFICE OF THE WASHINGTON COUNTY SAVINGS INS.
                    *Hagerstown*, November 20, 1873.

Received from Tyron  H. Edwards, one thousand and
thirty dollars on special  deposit, to draw interest from July
1st, 1873, at the rate of three per cent. semi-annually, if not
drawn out within one year."

The other three appellants each made a deposit, and each
received from the treasurer a certificate of  deposit in sub-
stantially the same form, with the exception that the amounts
and  rates of  interests were different.    Here we see that
money was loaned, to be repaid with interest when required
by the lender.    It is  impossible to infer from the transac-
tion that it does not impose the responsibilities and confer
the rights which ordinarily arise from an indebtedness.    On
the other hand the weekly depositor is a member of the cor-
poration ;  he is entitled to vote at any election for directors ;
he is entitled to such semi-annual dividends as may be earned
by the institution, and to an extra dividend every third year
from  the surplus, if  the president and  directors think  it
proper to declare one.    They are in fact and  substance the
stockholders who own the assets of the company.    When
the company goes into liquidation it is easy to see how the
assets ought to be distributed.    The debts must be first
paid, and after all liabilities are discharged, the assets must

be distributed among the stockholders according to their holdings. In other words, they must be paid over to the owners.

In the case of the deposit made by Mr. Edwards, after the first instalment of interest became due, it was agreed between him and the treasurer that if he would let the semi-annual amounts of interest remain in the institution, these amounts should draw interest as new principal. There was nothing objectionable in such an agreement as this. He had a right a draw his interest when it became due ; and he had a right immediately to lend it back to the institution. It came to the same result if they agreed beforehand to adopt this plan of investing the interest. It is in fact the usual practice of savings banks, which are conducted on the ordinary plan, to place the interest accrued on the deposit to the credit of the depositor as principal for the purpose of drawing interest, subject, of course, to his right to withdraw it from the bank if he does not wish it to remain. As an illustration of the legality of such a computation of interest we may quote from *Banks* v. *McClellan*, 24 Md. 63 : " Money due for interest may, by agreement, be changed into principal to bear interest, *in futuro*, but not otherwise." Other deposits were made by Edwards on the same terms.

It has been argued that these proceedings which we have recited were beyond the powers conferred by the charter and are therefore invalid. This institution was incorporated by the Act of 1868, chapter 85. The first section gives it power " to receive and make all deeds, transfers, contracts, conveyances and grants whatsoever." The third gives the directors power to elect a president and appoint all necessary officers, &c., &c., to provide for the admission of members, to regulate the manner of making and receiving deposits, to provide for the investment of the funds of the corporation, &c., &c., to pass all necessary by-laws, &c., &c. Under the by-laws the weekly depositors were made members ; and the deposits were received from the special depositors. Even if there had been no by-laws authorizing the special

deposits, it cannot be doubted that the corporation had power to borrow money and issue a promissory note or other stipulation for its payment.   In *Booth* v. *Robinson*, 55 Md. 436, it was said that " it is now well settled that corporations, like individuals, may borrow money for the conduct of their affairs without express authority therefor, whenever the nature of their business may render it proper or expedient.   And the power to borrow carries with it very generally, unless expressly restrained, the power to secure the loan by mortgage."   In *Davis*' *case*, 32 Md. 295, it had already been decided that a building association without express authority in its charter, had the power to issue promissory notes for the purpose of effecting a loan, or of furnishing evidence of an antecedent debt. . And this power was fully recognized in *Jackson* v. *Meyers*, 43 Md. 452, and in *Muth* v. *Dolfield*, 43 Md. 466.   But it seems to be very unnecessary to discuss the extent of the powers granted by the charter in this respect.   These sums of money were received by the corporation and appropriated to its benefit with the knowledge of the stockholders and became portions of the fund which contributed to the increase of their dividends.   At least, if not with their express knowledge, under circumstances which gave them every opportunity to know.   In one instance the money has remained in the possession of the corporation for more than twenty-two years, and in all that time the interest on it has been regularly credited to the depositor on its books. The funds of the corporation are now in a Court of Equity for distribution.   If they are not paid over to those persons who furnished these moneys to the corporation on the faith of an express promise to repay, most certainly great wrong and injustice will be done.   We will see whether such an anomaly can exist in jurisprudence.   In *Hospital* v. *Foreman*, 29 Md. 532, it was said : " If a party makes a contract with a corporation, which is simply beyond the powers of the latter, he may recover back the money paid thereon whether the contract be executed or executory."

This was an action at law. In another case, which was also an action at law, the doctrine was stated very distinctly in its application to facts similar to those which present the question before us. A savings bank had, in excess of its chartered powers, discounted a promissory note, and had brought suit against the endorser. It was held that although a corporation in making a contract has acted " in disagreement with its charter," yet " a party who has had the benefit of the agreement, cannot question its validity." It was declared that the decision proceeded on the principle that " it is inequitable to permit one who has received the proceeds and benefit of the contract, to repudiate it on the ground that the corporation from which he has obtained the benefit had no power to make the contract." And the bank's right of recovery was sustained. *United German Bank* v. *Katz*, 57 Md. 128. This decision was approved in *German, &c., Home* v. *Hammerbacher*, in 64 Md. 606. In this last case the contract was decreed to be specifically executed, it being held that even if the contract in question were *ultra vires*, the defendants under the circumstances of the case were estopped from setting up such defence. Other Courts have held that although the money obtained under *ultra vires* contracts must be returned to the party to whom it rightfully belongs ; yet an action cannot be maintained on the contract itself. Among many cases of this kind we may mention one in 139 United States Reports, p. 39, *Central Transportation Co.* v. *Pullman Car Co.* But whether an action is brought on the *contract* or the equitable grounds which show that the plaintiff ought *ex aequo et bono* to recover, the object which the law seeks to accomplish is the same. The very slight degree in which any technical rule will be permitted to interfere with the right of recovery is shown by two cases cited in *Logan County Bank* v. *Townsend*, 139 U. S. 76. The Court comments on these cases in this way : " In *National Bank* v. *Matthews*, 98 U. S. 621, it appeared that a national bank loaned money upon the security

of a note and a deed of trust of lands, both of which were assigned to it. The statute declared that a national banking association could loan money " on personal security," and could purchase, hold and convey real estate for certain named purposes, " and for no others," among which was not included the securing of a present loan of money by a deed of trust or mortgage on real property. The Court, while assuming that the statute, by clear implication, forbade the bank from making a loan on real estate, refused to restrain the bank from enforcing the deed of trust. The decision went upon these grounds : That the bank parted with its money in good faith ; that the question as to the violation of its charter, by taking title to real estate for purposes unauthorized by law, could be raised only by the Government in a direct proceeding for that purpose ; and that it was not open to the plaintiff in that suit, who had contracted with the bank, to raise any such question in order to defeat the collection of the amount loaned. If any doubt existed as to the scope of the decision in that case, it was removed by *National Bank* v. *Whitney*, 103 U. S. 99, where it was held that the right of a national bank to enforce a mortgage of real estate taken by it to secure indebtedness then existing, as well as future advances, could not be questioned by the debtor, and that a disregard by the bank of the provisions of the Act of Congress upon that subject only laid the association open to proceedings by the Government for exercising powers not conferred by law." A vast number of decisions upholding the general principle are collected in *Thompson on Corporations*. We do not find it necessary to quote more than two of them. " Thus, if a corporation has executed a promissory note for a consideration which it has received and retained, it is bound to pay the note, although it may have been executed in furtherance of a contract which was *ultra vires*. So, a corporation cannot avoid its obligation to pay money which has been loaned to it, and used by it, under the plea that in borrowing the money it exceeded its statutory power to

contract debts, or that its officers by whom the loan was negotiated were not properly authorized in the premises."
5 *Thompson on Corporations,* sec. 6018.

The special depositors ought to be paid in full according to the tenor of their contracts, in priority to the weekly depositors. Edwards is to receive compound interest, and the other appellants simple interest. As the order of the Court below was contrary to this result, it will be reversed.

> *Order reversed with costs in both Courts and cause remanded.*