# THE HAGERSTOWN MANUFACTURING, MINING AND LAND IMPROVEMENT COMPANY OF WASHINGTON COUNTY *vs.* MARTIN L. KEEDY, TRUSTEE, ET AL.

*Contract Between Two Corporations Having Some Directors in Common—Power of Benefit Society to Hold Land—Ultra Vires— Bill to Rescind Purchase of Land Made in Excess of Corporate Powers.*

When a contract is made between two corporations, the mere fact that some of the directors are common to both does not create any presumption of illegality or unfairness in the transaction.

When a corporation is authorized by its charter, or by general statute, to hold land for some purposes, its right to take and hold any particular parcel can only be called in question by direct proceeding instituted by the State.

A benefit society, incorporated for the purpose of paying money to its members in cases of sickness and death, purchased certain lots of ground from defendant at auction. Three years afterwards the society made an assigment for the benefit of creditors to plaintiff, who filed a bill alleging that at the time of the purchase of the lots the benefit society was insolvent to the knowledge of defendant; that the purchase of the lots was made as a speculation and not as an investment and was incompatible with the purposes of the society, and that some of the officers of the benefit society were also officers of the defendant, and that the purchase was fraudulent. The prayer of the bill was that the defendant be required to pay back the purchase-money and receive a reconveyance of the lots. The evidence established that the benefit society at the time regarded the purchase as a good investment, but the property was not necessary for the purposes of the society. Code, Art. 23, sec. 52, authorizes corporations to acquire any property necessary or proper to enable it to fulfill purposes named in the certificate of incorporation. *Held,*

1st. That there is no evidence to sustain the allegation that the sale of the lots was the result of a fraudulent combination between the directors of the two corporations or that the benefit society was then insolvent.

2nd. That the plaintiff cannot ask for a rescission of the contract of sale merely because the benefit society exceeded its powers in making the purchase.

Appeal from a decree of the Circuit Court for Washington County (STAKE, J.), directing M. L. Keedy, Trustee, to convey to the appellant the land conveyed by it to the Maryland Beneficial Association in October, 1892, and directing the appellant to pay to the Maryland Beneficial Association $1,085 with interest from October 5th, 1895, the date of the filing of the answer in the cause.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Alex. R. Hagner*, for the appellant.

1. The bill is faulty in that there is no allegation offering to reconvey the property to the appellant upon receipt of the purchase price and nothing to show the willingness of the appellee to place the parties as near as possible in the position before the contract was entered into. When the complainant offers to reconvey the property, etc., in question, it will have taken the first step towards reaching a position which may entitle it to be heard. *Memphis, etc.* v. *Dow*, 19 Federal Rep. 394; *27 Am. and Eng. Ency. of Law*, 373, note 4. The appellee certainly cannot retain the property purchased and recover the money paid for it. This is a proposition that needs no authority.

2. The contract sought to be set aside was entered into and completed on both sides three years before the deed of trust was made and nearly four years before the bill was filed in this cause to vacate the same. The bill admits that it was complete and executed. Executed and completed contracts will not be interfered with by Courts of Equity, even though they be beyond the powers of either party to enter into them. *Booth* v. *Robinson et al.*, 55 Md. 419; *Elysville Manufacturing Co.* v. *Okisco Co.*, 5 Md. 158. *Ultra vires* contracts are recognized as unassailable and are permitted to stand as the foundation of right acquired under them after they have been fully performed on both sides. *27 Am. and Eng. Ency. of Law*, 377; *Camden, etc., R. R. Co.* v. *Mary's Landing, etc., R. R. Co.*, 48 N. J. L. 530;

*St. Louis, etc., R. R. Co.* v. *Terre Haute, etc., R. R. Co.*, 145 U. S. 409; *Penn. R. R. Co.* v. *St. Louis, etc., R. R. Co.*, 118 U. S. 316; *Union Trust Co.* v. *Illinois Midland R. Co.*, 117 U. S. 468; *Central Transportation Co.* v. *Pullman Car Co.*; 139 U. S. 56; *Buckeye Marble Co.* v. *Harvey*, 92 Tenn. 115; *James* v. *Eve*, L. R., 6 H. L. 335; *Taylor* v. *South & North Alabama R. Co.*, 4 Woods (U. S.) 575.

3. This contract was not *ultra vires* the powers of the charter of The Maryland Beneficial Association. Because its charter does not expressly authorize it to purchase real estate, does it necessarily follow that it has no power to invest its funds in that kind of property? There is nothing in the Code of Maryland to prevent the Maryland Beneficial Association from acquiring real estate as an investment. It would be the duty of the board of directors to invest its surplus earnings in order that its accumulated fund could be earning something to increase its assets. The testimony of C. W. Sebold shows that lots within a few yards of the lots in question were at the time he testified, selling for as much as $200 apiece, and he swears that they were bought as an investment. Insurance companies are not to be precluded from investing their funds in real estate, and directors cannot be charged with bad faith if their investments do not always bring the best returns.

It is sought to cast reflections on this transaction because two of the directors were the same in both corporations. There is no legal presumption of illegality or unfairness in transactions between two corporations from the mere fact that a portion of the board of directors in the one are also members in the other. *Booth* v. *Robinson*, 55 Md. 420.

It seems that the secretary of the Maryland Beneficial Association did not record the resolution in the minutebook authorizing the manager, A. Romain, to buy these lots. Is that alone to be construed as an act of fraud? Or that the purchase was not the act of the corporation? The testimony of Mr. Sebold shows that such a resolution was agreed to—but the corporation acted and paid out the pur-

chase price, thereby ratifying the transaction.   Fraud is
nowhere proven, nor can it be inferred from any facts or
circumstances in this case.   A contract once made and car-
ried into execution cannot be rescinded or set aside, except
upon the clearest and most satisfactory proof of fraud or
mistake.   *McShane* v. *Hazlehurst,* 50 Md. 107.

The evidence shows that at the time of the purchase in
October, 1890, the Maryland Beneficial Association had
considerable money and investments and was not insolvent,
owing no debts.   Not one allegation in the bill has been
established.   But have not the Maryland Beneficial Asso-
ciation and its stockholders slept on their rights ?   *Keedy* v.
*Nally,* 63 Md. 311; *Cook on Stockholders,* sec. 666.

*Alex. Armstrong* and *Charles D. Wagaman* (with whom
was *William T. Hamilton, Jr.,* on the brief), for the appel-
lees.

The question is whether a transaction such as is detailed
in this case will stand ; whether the Beneficial Association
which has found its way into the hands of a trustee can
recover back from the Land Company the moneys which
were paid over to the Land Company by returning title to
the lands which had been conveyed, or whether the mem-
bers of the association, who were placing their pittances
weekly into the treasury of the association, are to be
shorn of their moneys and take in lieu thereof seven "boom"
lots lying outside the corporate limits of Hagerstown in the
open.

That the deal in real estate made by the association
"from its start to its finish" was an *ultra vires* act on the
part of the association, there can be no manner of doubt.
*Inhabitants of Sutton Parish* v. *Cole,* 3 Pick, 232 ; *Weckler* v.
*1st. Nat'l Bank,* 42 Md., 581 ; *Reese on Ultra Vires,* sec. 8,
9, 11, 19 ; *Cook on Stock and Stockholders,* sec. 664 and note.
" Upon the principle now perfectly well settled that a body
incorporated for special purposes can not devote any part
of its funds to objects unauthorized by the terms of its

charter. "  *Booth* v. *Robinson*, 55 Md. 435.  Being an *ultra vires* act, under the authorities it was a void act—an illegal act—and as such will it stand or can it be relieved against? If the. transaction were executory no one would say that either party could enforce it.   The authorities, we. believe, are uniform as to this  point. · *Reese on Ultra Vires*, 53, 54. But it is contended that the transaction is closed; that the Land Company has received the purchase price and has given a deed; that it is an executed contract, and therefore the association, or its representative, the trustee, can have no relief in equity.   Is this the law?

The Land Company has the money for the lots; the Beneficial Association has the title.   The members of the association, who are the aggrieved parties, come and ask the aid of this Court to overthrow a transaction which was a fraud upon their rights and interests, and that this illegal act which was engaged in by the directors, now that it has come to light, shall be set at naught and the moneys. restored to the hands of the trustee to be distributed to the policy holders of the association.   We think that this can well be done.  The principles governing such cases briefly stated are these: A contract *ultra vires* is void; if executory, neither party can enforce it; if executed, either party injured by its performance can ask to have the contract disaffirmed, and to be restored to his rights and have restitution of money or property by surrendering all benefits under the contract to the opposite party.   In other words, that the parties be placed as nearly as possible in the state in which they were before the contract was made. *Maryland Hospital* v. *Foreman*, 29 Md. 531; *Cent. Transportation Co.* v. *Pullman Car Co.*, 139 U. S. 24; *Railway Co.* v. *Keokuk Bridge Co.*, 131 U. S. 387; *Curtis* v. *Levitt*, 15 N. Y. 297; *Levitt* v. *Palmer*, 3 Comst. 19; *Platt* v. *Short*, ·79 N. Y. 437; *Reese on Ultra Vires*, sec. 74, 75.

SCHMUCKER, J., delivered the opinion of the Court.
The bill of complaint in this case was filed in the Circuit

Court for Washington County by the appellee against the appellant to procure a rescission of a sale of certain real estate made by the appellant to the Maryland Beneficial Association of Washington County. The sale was made in October, 1890, and the bill was filed in August, 1895. In January, 1895, the Beneficial Association made a deed of trust for the benefit of its creditors to the appellee, who was authorized to file the bill by an *ex-parte* order of the Court under whose supervision he was administering the trusts of the deed.

It appears from the record that the appellant, in the legitimate exercise of its corporate powers, undertook to lay out in town lots and expose for sale a tract of land owned by it lying in the suburbs of Hagerstown. At a public sale of these lots the Beneficial Association purchased seven of them at an aggregate price of $1,085; payable one-third cash and the balance in one and two years. The lots were paid for by the Beneficial Association according to the terms of sale, and on October 24th, 1892, they were conveyed to it by a deed which it placed on record a few days thereafter.

The bill of complaint sets up title to the lots in the appellee as trustee under the deed of trust from the Beneficial Association, and relies upon two grounds for the relief for which it prays. These grounds are, *first*, a want of power in the association to purchase and hold the lots, and *secondly*, that their purchase was the result of a fraudulent combination between the directors of the two corporations. In amplification of the second ground the bill avers that two of the directors were common to both corporations, that the Beneficial Association was insolvent to the knowledge of the appellant when the purchase was made, and that the purchase was not made for the *bona fide* purpose of investment, but as a speculation. The prayer of the bill is that the appellant may be required to repay the price paid to it for the seven lots, with interest, upon receiving a conveyance of the lots.

The appellant answered the bill neither admitting nor denying the want of capacity in the Beneficial Association to purchase the lots, denying any knowledge of its insolvency, and emphatically denying the allegations of fraud set up in the bill, and insisting that the sale was made in perfect good faith by the appellant.

The appellee, to support the allegations of the bill, introduced the testimony of two witnesses, Forbes and Barrick, of whom the former was president of the Beneficial Association and the latter was its general agent. These witnesses not only failed to prove the charges of fraud contained in the bill, but testified in substance that the lots were bought for investment by the association in pursuance of a previous agreement or understanding arrived at by its directors at a conference at which they were all present, and that no action had been taken by the appellant to induce or procure the purchase of the lots by the association. No acts or conduct were proven on the part of any of the directors of either corporation from which a fraudulent purpose could be fairly inferred. Two of the directors were shown to be common to both corporations but that fact alone, while it inclines us to look carefully into their conduct, does not afford ground of legal presumption of illegality or unfairness in transactions between the two corporations. *Booth* v. *Robinson et al.*, 55 Md. 441. The lots were sold at public sale and there is no testimony impeaching the fairness of the sale.

Nor does the record show that the Beneficial Association was insolvent at the time of the purchase. The only testimony on the subject of its financial condition at that time is that of the witness Forbes, who says that although the association had been in business for but a short time (less than one year), it already had 1,400 members, and was in receipt of an income over and above all expenses of from $40 to $100 per week and had $700 out on mortgage and had no debts. The evidence on this subject is incomplete, but it neither proves nor indicates insolvency.

The purchase of these lots may have been unwise or indiscreet, but we find no evidence in the record sufficient to sustain the charges that it was the result of a fraudulent combination between the directors of the two corporations, or that the sale was not fair and *bona fide* on the part of the appellant.

We now come to the contention of the appellee that the purchase of the lots of ground was not within the corporate power of the Beneficial Association. The appellee's brief was prepared, and his argument in this Court was made upon the theory that the purchase of the lots was *ultra vires* the corporation and was for that reason altogether void, but the bill of complaint is drawn upon a different theory. It does not allege or assume a total want of capacity on the part of the association to purchase or hold real estate or even that the conveyance of the seven lots in question did not operate to vest the title to them in the association. The bill assumes that the title did pass to the association, for it distinctly avers that, under the deed of trust from that body to the appellee, " the title to the said lots became vested in the said Martin L. Keedy, trustee," and the prayer for relief is not that the purchase should be declared *ultra vires* or void, but it is for a reconveyance of the land to the appellant and a repayment by it of the purchase money. The allegations touching the incapacity of the association are simply that the lots were purchased not for investment but for speculation, and that their purchase was incompatible with the purposes for which it was incorporated, and in fraud and derogation of the rights of its policy holders.

If, however, we assume, for the purposes of this opinion, that the scheme and allegations of the bill are in strict accord with the argument and contention of the appellee's counsel we do not think the case presents any such incapacity on the part of the Beneficial Association to purchase the land in question, as can be availed of by the appellee to maintain the present proceeding.

It appears from the record that this association was incorporated in February, 1890, for the purposes indicated by its title, by filing a certificate of incorporation under the provisions of Article 23 of the Code. The certificate is in the usual form and contains no recital or enumeration of the powers to be exercised by the corporation but simply refers in that connection to the provisions of the Code of Public General Laws. Under sec. 53, of Art. 23, of the Code, this association, in common with all others formed under the provisions of that Article, had power to acquire by purchase and to hold any real or personal property necessary to enable it to carry on the operations or fulfil the purposes named in its certificate of incorporation.

The Beneficial Association thus having by law the capacity to purchase and hold real estate under some circumstances, and having purchased the lots of ground in controversy and taken a conveyance of them, the question remains whether, in the absence of fraud, the appellee as its assignee is entited to maintain the present bill upon the mere ground that the association exceeded its powers in making the particular purchase. The weight of authority is plainly against the right of the appellee to do so.

It has been repeatedly held in Maryland and elsewhere that when a corporation has by its charter or by general statute power to hold land for some purposes or to a limited extent, its right to take and hold any particular parcel of land, is a matter solely between the corporation and the State and can be called in question only in a direct proceeding instituted by the State for that purpose. *Cowell* v. *Colorado Springs Co.*, 100 U. S. 55; *Hamsher* v. *Hamsher*, 132 Ill. 273; *Heironimus* v. *Sweeney*, 83 Md. 160; *Hanson* v. *Little Sisters of the Poor*, 79 Md. 441; *In re Stickney's Will*, 85 Md. 107

The doctrine that, even where a corporation has no power to take or hold real estate, a deed made to it is not void but voidable, and that only at the suit of the State, has found strong support. *Union Nat. Bk.* v. *Matthews*, 98 U. S. 263;

*Reynolds* v. *First Nat. Bank,* 112 U. S. 405; *Fritts* v. *Pullman Co.,* 132 U. S. 282.

The appellee having failed to show a state of facts entitling him to the relief prayed for in his bill upon the ground of fraud practiced upon the Beneficial Association in the sale to it of the seven lots of ground, and not being entitled to raise in this proceeding the question of the capacity of the association to purchase the lots, it follows that the decree appealed from must be reversed and his bill dismissed.

> *Decree reversed with costs and bill dismissed.*

(Decided June 15th, 1900.)