## RUSSELL I. DIGGS ET AL.

### *vs.*

## MORGAN COLLEGE.

*Corporations: charter powers; to acquire and hold land. Ultra
vires attack, how raised; by Attorney-General. Colored
residential development, not public nuisance.*
*Demurrers: concede facts.*

The charter powers of Morgan College gave it authority to
hold and acquire land for the purpose of investing its funds
and of carrying on its work and plans; under such powers the
purchase of the corporation of seventy acres of land, whether
for their institutional buildings or as an investment for their
funds is within the corporate authority.                    p. 267

The question of the vice of *ultra vires* corporate acts can not
be raised by an individual, but must be by proceedings directly
instituted by the Attorney General of the State.          p. 268

Improvement of land, as a colored residential neighborhood
is not of itself a public nuisance.                          p. 269

A demurrer concedes the verity of every alleged fact that is
well pleaded.                                               p. 267

*Decided October 30th, 1918.*

Appeal from the Circuit Court for Baltimore County.   In
Equity.   (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was submitted on briefs to BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*Edgar Allan Poe* submitted a brief for the appellants.

*Maloy and Brady* submitted a brief for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

Morgan College is a corporation chartered by the Acts of 1890, Chapter 326, as amended by the Acts of 1900, Chapter 357. The purpose for which the corporation was formed was for furnishing instruction in the higher branches of learning to members of the negro race.

Section 5 of the Act of 1900 defines the powers of the corporation, as follows:

"The said Morgan College shall have the power to found, establish and maintain a school or schools of education, learning and training, establish and maintain scholarships, professorships, lectureships, chairs of instruction and auxiliary schools, and to have, hold and acquire by gift, grant, purchase, devise or any other mode land and property, both real and personal, for the purpose of supporting such schools, scholarships, professorships, lectures and chairs, and for the purpose of investing the funds of said corporation and carrying on its work and plans."

The bill in this case after reciting the formation of the corporation, and definition of its powers, alleges that on the 1st June, 1917, Morgan College, the defendant, acquired about seventy acres of land at the intersection of the Hillen road and Grindon lane; that the amount of land so acquired was in excess of any proper and legitimate need of the defendant, and that the defendant has announced that it intends to use a portion of the tract as building lots, to establish thereon a residential negro colony.

The bill further sets out that the plaintiffs own and occupy property immediately adjacent to the tract so acquired by Morgan College, and that its use for the purposes named would materially depreciate the value of the plaintiff's property, and work an irreparable loss upon them. The bill ac-

cordingly prays for an injunction against the college, its officers, etc., from developing and dividing the seventy acre tract or any part of it, for the purpose of establishing a residential negro colony thereon.

The legal ground upon which this relief is asked, as set out in the bill, is that the defendant has not the power under its charter to purchase real estate for the purposes of development and its resale, in the manner and for the purpose alleged.

A demurrer was filed to the bill, which was sustained by the Circuit Court for Baltimore County, and the bill dismissed. It is from that action of the Court that the present appeal is taken.

A number of different grounds were set up in the demurrer, but only two of them have been pressed on this appeal. These are: "1. Has a Court of Equity jurisdiction to grant relief at the instance of individuals suffering irreparable injury as the result of such *ultra vires* acts? 2. Are the threatened acts of Morgan College, above set forth, *ultra vires?*"

A construction of charter powers, as raised by the second of these questions, has been a matter of frequent consideration in the courts of this State. In the case now under consideration the charter powers are exceedingly broad. Authority is given to "have, hold and acquire * * * land and property both real and personal for the purpose of supporting such school, scholarships, professorships, lectureships and chairs, and *for the purpose of investing the funds of said corporation and carrying on its work and plans.*"

There is no definite limitation either upon the acreage or value of any land which the institution may own, occupy, use and enjoy. Most of the cases where an attack similar to the present one is made are based upon a charter limitation of the extent or value of the property which may be acquired by the corporation.

No fact is better known than that educational institutions require today far more extensive room than they did fifty, or even twenty-five years ago, and hence in institutions of more

recent creation we see an acquisition of property far greater than was required when they were begun, or than their founders anticipated that they would require at the time, and it is accordingly a natural sequence that in planning a school or college today more land will be obtained, if practicable, than is immediately required for the erection of buildings to accommodate present needs. The purpose is to provide for future growth. This is peculiarly applicable in the case of schools and colleges which have for their aim the education of the colored population, for it is a well recognized fact that in the present demand for general education the colored race may be expected, in the not distant future, to require far more room for expansion than in corresponding white schools.

The demurrer of course concedes the verity of every alleged fact that is well pleaded. It must, therefore, be assumed that it is not the purpose of the trustees of Morgan College to hold the entire seventy acres for collegiate purposes, but that it is their purpose to improve the same by subdivision and sale as building lots.

The painstaking judge who rendered the decision below, dwelt upon the fact that this might well be regarded as one form of investment. In this he was undoubtedly correct, inasmuch as real estate, situate in or adjacent to the outlying territory of a large and populous city is, and always has been a favorite form of investment with a certain class of persons, and from investments of this character some of the large fortunes of the present have been derived.

The remaining question is, whether the present plaintiffs, by reason of their adjacent holdings can attack the acquisition of this property by Morgan College as being an act in excess of the corporate powers, powers which are always limited to the expressed powers as contained in the charter, and those necessarily incident thereto.

While there has been some contrariety of opinion upon this question, the more recent decisions, both of this state and elsewhere, have been entirely uniform, and are of easy application to the case at bar.

In *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434; *Stickney's Will,* 85 Md. 106; *Hagerstown Mnfg. Co.* v. *Keedy,* 91 Md. 430, and *Jones* v. *Habersham,* 107 U. S. 174, it has been held that it did not lie within the powers of an individual to make the attack, that it could only be done in a direct proceeding instituted by the Attorney General of the State.

To this line of cases there is a class of cases which at first seem to hold an opposite view, and which are well illustrated by the case of the *Seattle Gas & Electric Light Co.* v. *The Citizens Light & Power Co.,* 123 Fed. 588. In that case a New Jersey corporation, which had been held in the state of its creation to be acting *ultra vires,* when it attempted to lay certain pipes, could not in another State exercise a power which had been denied to it in its own state; but the decision of that case turned mainly upon the question of the creation of a public nuisance, and it was held that where the doing of an act by a corporation amounted to creating such public nuisance, it might be enjoined by any one suffering special damages. This doctrine in no way conflicts, therefore, with any of the adjudicated cases in this State.

While it is true that the cases in this State to which reference has been made dealt primarily with personal property, no reason has been suggested, nor do the adjudicated cases disclose any variation of the principle, according to the quality of the property, whether real or personal, which affects the conclusion reached.

The *National Bank cases* cited by the appellant differ from the present case in one marked respect. In those cases the banks were formed under the authority of an Act of Congress, which expressly defined and limited their powers. The Act contained no such broad and sweeping power as that contained in section 5 of the Act of 1900.

*Hudson River Tel. Co.* v. *The Watervliet Turnpike & R. Co.,* 135 N. Y. 393, has been relied upon by the appellant. In that case the damage was alleged to be irreparable, but the Court draws a distinction between ordinary consequential damage, and the encroachment upon private rights amounting

to the appropriation of property, and accordingly refused the injunction.

The present case, therefore, resolves itself practically to this: does the location of Morgan College, and the improvement of its lands, even in the manner alleged in the bill, amount to a public nuisance? If so, then the Court of Equity has clearly the power to intervene and issue the injunction prayed for; but unless it does so amount to a public nuisance, the Court lacks the requisite power to grant the injunction now asked.

Whatever view may have been entertained formerly, since the decision in *Buchanan* v. *Warley,* 245 U. S. 60, and *Jackson* v. *State,* 103 Atl. 910, it is clear that the improvement of land as a colored residential neighborhood is not of itself a public nuisance. It may or may not become such, according to the way in which after the improvements are made, it is conducted. But to give the Court jurisdiction, since the elements of being a public nuisance and special damage to the plaintiff must co-exist, the judge from whom this appeal was taken was correct in his conclusions.

The bill alleges the special damage; it nowhere alleges or suggests that the sub-division of the land, and its improvement will amount to a public nuisance; indeed it is impossible to see how in view of the decisions to which reference has been made such an allegation could have been inserted in the bill.

*Decree affirmed; appellants to pay the costs.*