CRIST et al. v. HENSHAW et al.

No. 32235. Oct. 23, 1945.

Rehearing Denied Nov. 20, 1945.

*163 P. 2d 214.*

Norman Barker, of Tulsa, for plaintiffs in error.

John W. McCune, of Tulsa, for defendants in error.

DAVISON, J. This is a suit for permanent injunction originally filed in the district court of Tulsa county by Paul A. Crist, W. L. Rhodes, H. H. Brewer, Buford Ford, Sam Courtney, W. A. Harris, Jake Wilson, Charles Brown, Mrs. A. C. Meek, M. D. Jackson, Ben A. Miller, J. F. Ireland, Charles Saville, Eva Keathley, Carrie Mobley, and E.

R. Wells, all being white persons, plaintiffs in error, hereafter called plaintiffs, against R. F. Henshaw and J. Lacy Ballenger, also white persons, defendants in error, hereafter called defendants, to restrain and enjoin said defendants from promoting a settlement for negroes in the immediate vicinity of the lands owned by plaintiffs. The district court sustained a general demurrer to the petition and, plaintiffs having stood on their demurrer, dismissed the case. From such judgment plaintiffs have appealed.

The first paragraph of plaintiffs' petition alleges that they are the owners of certain real estate lying contiguous to and in the general neighborhood of the tract of land involved herein, which contains approximately 70 acres which is just outside the city limits of the city of Tulsa, and that the average general market value of their lands at the time of the filing of the petition was from $300 to $500 per acre, and that most of plaintiffs are bona fide residents upon their said lands, and have built valuable improvements thereon, consisting of residence buildings and the necessary outbuildings at the cost in the aggregate of many thousands of dollars. This paragraph also alleges that plaintiffs' interests are in common and that plaintiffs are authorized by other property owners in the neighborhood to appear for them.

The second paragraph of the petition alleges that the defendants have platted or are prepared to plat the lands involved herein into lots and blocks, and to invite, import and settle and sell said property as subdivided to negroes, and to create a settlement of persons exclusively of African descent upon said property, and that if such plan is carried into effect, would destroy their property rights and inflict irreparable injury on the plaintiffs by reducing and destroying the market value of their property, and that the execution of said plan would create a nuisance and insufferable and unlivable conditions upon plaintiffs; that said defendants are willfully, maliciously, in disregard of plaintiffs' rights, for their own private gain, attempting to carry out such plan.

The third paragraph of the petition alleges that the defendants through a joint conspiracy with each other are preparing and have prepared to carry their intention into effect by inviting negroes to buy and move onto said property, and that if such plan is carried out, the value of plaintiffs' property will be destroyed.

The prayer of the petition then alleges that the plaintiffs have no other adequate remedy at law, and therefore pray for judgment against the defendants, perpetually enjoining and restraining them from carrying out their plans as hereinbefore set out in their petition.

The question involved is whether or not a sale of property to negroes, under the situation as set forth in plaintiffs' petition, can be restrained, as an act of nuisance, or as a conspiracy, because of the fact that the purchasers or invited purchasers are negroes, in the absence of any allegation of any restrictive agreement or covenant against negro ownership or occupancy.

The plaintiffs state that mass damage will be inflicted by the acts of the defendants upon property owners of the whole community, and that the character of the damage will be so grave and far-reaching that the school system in their community will be destroyed; that the plaintiffs will have to abandon their homes at a great financial sacrifice, and that the defendants by their acts, if permitted to pursue their plans, will have created a public nuisance within the meaning of 50 O. S. 1941, § 2, which reads as follows:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

The plaintiffs further argue that this case does not present a problem involv-

ing the race question for the reason, as they state, that the case is a suit between individuals who are all white people and that the acts of the parties are purely the acts of private individuals and not of any city, state or the national government, and in support of this argument cite the cases of National Federation of Ry. Workers v. National Mediation Board, 110 F. 2d 529; Teague v. Brotherhood of Locomotive Firemen and Enginemen, 127 F. 2d 53, and other similar cases.

We are of the opinion that the reasoning of plaintiffs is faulty and based upon a false premise, and that the authorities cited in support thereof are not in point under the allegations contained in their petition. The basis of their petition is their objection to sales by the white owners to negroes, which sales if consumated, and the purpose of the sales carried into effect, would create a nuisance, thereby greatly depreciating the value of their respective properties.

The right of negroes to purchase property is predicated upon the Fourteenth Amendment to the Constitution of the United States and the Civil Rights Act of April 9, 1866. The first section of the Fourteenth Amendment to the Constitution of the United States provides:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Civil Rights Act, supra, 8 U.S. C.A. sec. 42, provides:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

The Fourteenth Amendment does not apply to acts of private individuals, but under the facts in the present case it would be a discrimination as is prohibited by said amendment for a court to restrict such sales. In re Virginia, 25 L. Ed. 676, 100 U. S. 339.

The question involved herein has been before the courts a number of times and the law has been well settled since the decision in Buchanan v. Warley, 245 U. S. 60, 62 L. Ed. 149, L.R.A. 1918C, 210. This case is the leading authority holding that a state by legislative enactment cannot prevent the sale of real estate by a white person to a negro, solely because of the fact that the purchaser is a negro.

The case of Buchanan v. Warley, supra, was decided November 5, 1917, and has been consistently followed by both state and federal courts since that time. See Addesleigh Park Holmes, Inc., v. Bouchey, 13 N.Y.S. 2d 208; Diggs et al. v. Morgan College, 133 Md. 264, 105 Atl. 157; Schoolhause et al. v. Browning et al., 190 N.Y.S. 353. Also, see, Allen v. Oklahoma City et al., 175 Okla. 421, 52 P. 2d 1054.

The law is clear that the sale of land to negroes or the improvement of lands as a residential settlement is not of itself a public nuisance. If such was not the law, it would be almost impossible for negroes to ever start a new settlement for the betterment of themselves or their race. To hold otherwise would make the Fourteenth Amendment and the Civil Rights Act meaningless.

The judgment of the trial court sustaining the demurrer to plaintiffs' petition is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, and ARNOLD, JJ., concur.