Discrimination — Real Estate Broker — License Revocation The Oklahoma Real Estate Commission would be justified in considering evidence that a real estate broker discriminated against a person in the terms, conditions, or services of a real estate transaction or falsely informed a person because of race, religion, or national origin in determining untrustworthy or improper conduct as grounds for license revocation or suspension under 59 O.S. 850 [59-850] (1961). The Attorney General has had under consideration your letter of December 4, 1967, requesting an opinion on the following questions: 1. If a real estate broker or salesman, licensed under 59 O.S. 836-837 [59-836-837] (1961), refuses to engage in real estate transactions with a person or discriminates against a person in the terms, conditions, or services involved in real estate transaction solely because of race, religion, or national origin, would such action be considered improper conduct under 59 O.S. 850 [59-850](h) (1961)? 2. If not, is there any provision of Oklahoma law that would provide legal redress for a person discriminated against in real estate transactions because of race, religion, or national origin? 3. If the above questions are answered in the negative, has the State of Oklahoma in failing to prohibit such discrimination or afford legal redress violated Amendment XIV, Section 1, of the United States Constitution? The United States Constitution, Amendment XIV, Section 1, provides in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Revised Statutes Section 1978, 42 U.S.C.A. 1982, which is derived from the Civil Rights Act of 1866, provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. R.S. Section 1978." The Civil Rights Cases, 109 U.S. 3,3 S.Ct. 18, 27 L.Ed. 835, established the principle that the provisions of the Fourteenth Amendment refer only to "state action" as distinguished from "private action." It has long been held that state action includes the acts of a state's legislature, Richmond v. Deans, 281 U.S. 704,50 S.Ct. 459, 74 L.Ed. 1128, executive department, Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676, and judicial department, Bridges v. California, 314 U.S. 252,62 S.Ct. 190, 86 L.Ed. 192, as well as those of its administrative agencies, Home Telephone v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312,57 L.Ed. 510, and political subdivisions, Hague v. C10, 307 U.S. 496, 59 S.Ct. 954,83 L.Ed. 1423. Oklahoma has held in Crist v. Henshaw, 196 Okl. 168,163, P.2d 214, that the sale of property to Negroes cannot be restrained as a nuisance or conspiracy in the absence of any allegation of any restrictive agreement or covenant. Subsequently, the United States Supreme Court in Shelley v. Kraemer, 344 U.S. 1,68 S.Ct. 836, 92 L.Ed. 1161, declared that judicial enforcement of private discrimination in the form of racial restrictive covenants to be "state action" in violation of theFourteenth Amendment. Abstract Investment v. Hutchinson,22 Cal.Rptr. 309, held that a court order of eviction would be "state action" in violation of theFourteenth Amendment if the reason for eviction was based solely on the race of the tenant. Thus, the rule is apparent that there must be some state action before theFourteenth Amendment is violated. We find no authority which suggests that the licensing of a real estate broker by the state makes such a broker or agent an official of the state. Since a real estate broker does not exercise any part of the sovereign power of the state, his actions do not constitute "state action" as contemplated in theFourteenth Amendment. Consequently, discrimination by a real estate broker does not invoke theFourteenth Amendment solely because he is licensed by the state. 59 O.S. 850 [59-850] (1961), provides in part: "The Commission may, upon its own motion, and shall upon written complaint filed by any person, investigate the business transactions of any real estate broker or real estate salesman, and shall have the power to suspend or revoke any license obtained by false or fraudulent representation, or if the licensee is performing or attempting to perform any of the following acts, or deemed to be guilty of: . . . . "(b). Making substantial misrepresentation or false promises in the conduct of his business, or through agents or salesmen or advertising, which are intended to influence, persuade or induce others. "(h). Any other conduct which constitutes untrustworthy or improper, fraudulent or dishonest dealings. . . . . "(o). Unworthiness to act as broker or salesman, whether of the same or of a different character as hereinbefore specified; or because the broker or salesman shall have been convicted of a crime involving moral turpitude." New York has a similar statute which authorizes the Secretary of State to suspend or revoke the license of a real estate broker for "untrustworthiness." In Diona v. Lomenzo,26 A.D.2d 473, 275 N.Y.S.2d 663 (1966), the court held that under this statute the Secretary of State had the power to revoke a real estate broker's license for untrustworthiness where a broker and his employees falsely told Negroes that apartments in areas not inhabited by Negroes were unavailable. The court held: "The pattern of misrepresentation as to available housing was clearly and fully established. That in itself, without regard to the race of the applicants, might be sufficient to establish untrustworthiness with respect to the general public. A real estate broker deals in a commodity whether it be residential housing or commercial buildings, and licensees should be required to deal openly and fairly with the public when information is sought from them." Petitioner urged that "untrustworthiness" was not synonymous with "discrimination," but the court held discriminatory acts might constitute "untrustworthiness" and held that:" `The real estate broker is brought by his calling into a relation of trust and confidence' (Roman v. Lobe, supra, 243 N.Y. P. 54, N.E. p. 462), and demonstrated misconduct in disregard of law and public policy may be considered in determining untrustworthiness." Thus, while a real estate broker who is guilty of discrimination in a real estate transactiOn or offering might not violate theFourteenth Amendment or 42 U.S.C.A. 1982 it might be shown that such actions constitute untrustworthy or improper conduct which would be grounds for suspension or revocation of his license. Therefore, in answer to your first question it is the opinion of the Attorney General that Oklahoma Real Estate Commission would be justified in considering evidence that a real estate broker discriminated against a person in the terms, conditions, or services of a real estate transaction or falsely informed a person because of race, religion, or national origin in determining untrustworthy or improper conduct as grounds for license revocation or suspension under 59 O.S. 850 [59-850] (1961). The answer to your first question makes it unnecessary to answer your second and third questions. (Penn Lerblance)